866 F.2d 881
 AFFHOLDER, INC., Plaintiff-Appellant, (86-5348),
Plaintiff-Appellee, (86-5349),
v.
PRESTON CARROLL COMPANY, INC., and CFW Construction Company,
Inc., Defendants- Appellees, (86-5348).
PRESTON CARROLL COMPANY, INC., and CFW Construction Company,
Inc., Third-Party Plaintiffs-Appellants, (86-5349),
v.
The LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER
DISTRICT OF JEFFERSON COUNTY, KENTUCKY, H.C. Nutting
Company, Hubbard E. Ruddy Consulting Engineers, Inc. and
Presnell Associates, Inc., James-Winstead & Associates,
Inc., D.M.J.M., Inc. (Successor in Name to Vollmer
Associates, Inc.), and E. Lionel Pavlo, Consulting Engineer,
d/b/a Vollmer-Presnell-Pavlo, a Joint Venture, Third-Party
Defendants-Appellees.
 Nos. 86-5348, 86-5349.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 12, 1987.
Decided Feb. 1, 1989.
Rehearing and Rehearing En Banc Denied March 20, 1989.
 
 Stephen S. Schuster, Odgen, Robertson and Marshall, Louisville, Ky., G. Carroll Stribling, Jr. (argued), Fordyce & Mayne, St. Louis, Mo., for plaintiff-appellant in No. 86-5348.
 Thomas J. Kirkwood, Cincinnati, Ohio, Kyle T. Hubbard, Walter K. Swyers, Jr., Karen A. Conrad, Louisville, Ky., for defendants-appellees in No. 86-5348.
 John K. Gordinier (argued), Louisville, Ky., for Louisville & Jefferson Co. Metro. Sewer Dist.
 Mary G. Moody (argued), Trabue, Sturdivant & Dewitt, Nashville, Tenn., for third-party plaintiffs-appellants in No. 86-5349.
 Before ENGEL, Chief Judge*; and KRUPANSKY and GUY, Circuit Judges.
 ENGEL, Chief Judge.
 
 
 1
 This appeal requires us to consider whether, under Article III, Section 2 of the United States Constitution, a cooperative litigation agreement executed by the plaintiff and defendant has eliminated any "case or controversy" between the parties, thus depriving the district court of jurisdiction over this litigation. The district court held that the litigation agreement eliminated a "case or controversy." However, we hold that Article III's "case or controversy" requirement has been met, and therefore we reverse and remand.
 
 I.
 
 2
 In 1974 the Louisville and Jefferson County Metropolitan Sewer District of Jefferson County, Kentucky (MSD) undertook the planning and construction of a wastewater treatment project to serve both the North County Area and the Pond Creek-West County Areas of Louisville. Known as the Master Plan Expansion Program, the project was divided into approximately 128 different design/construction segments. This dispute focuses upon a segment known as the Pond Creek-4 Section (PC-4).
 
 
 3
 On September 11, 1974, MSD entered into a contract with a joint venture comprising Vollmer Associates, Inc., Presnell Associates, Inc., and Pavlo Engineers, Inc. (VPP). VPP was hired to provide management services in conjunction with the investigation, study, design and construction of the project.[1] On March 4, 1975, H.C. Nutting Company (Nutting) contracted with VPP to provide soil testing, sampling and other geotechnical services for the project. On March 3, 1977, Hubbard E. Ruddy Consulting Engineers, Inc. (Ruddy) contracted with MSD to be the PC-4 section engineer whereby Ruddy agreed to provide MSD initial construction estimates and other engineering data.
 
 
 4
 After Ruddy completed its designing and engineering tasks, MSD sought bids from general contractors. The successful bidder was a joint venture between Preston Carroll Company, Inc. and CFW Construction Company, Inc. (PC/CFW), both Tennessee corporations with principal offices in Tennessee. On April 9, 1979, MSD and PC/CFW executed a contract whereby PC/CFW agreed to be general contractor on the PC-4 section. On July 5, 1979, PC/CFW subcontracted the underground tunneling work to Affholder, Inc. (Affholder), a Missouri corporation with its principal place of business in Missouri, at the cost of $960,000. Construction on the PC-4 section began in May 1979 and was scheduled for completion in September 1980.
 
 
 5
 Affholder, however, encountered difficulties in tunneling, which resulted in construction delays and greatly increased Affholder's expected costs. Nevertheless, the project was completed and delivered to MSD on January 16, 1981, and MSD accepted the job as complete on February 6, 1981. In the meantime, Affholder had informed PC/CFW that it would seek to offset its increased costs by filing a claim for an equitable adjustment under its subcontract, on the basis that soil conditions had been misrepresented to Affholder. On March 10, 1981, Affholder presented its claim to PC/CFW, and PC/CFW submitted the claim to MSD on April 2, 1981. On April 10, 1981, MSD rejected the claim for additional compensation.
 
 
 6
 Affholder and PC/CFW then negotiated concerning the problems on the PC-4 section, and on January 7, 1982 reached the following litigation agreement:
 
 AGREEMENT
 
 7
 This Agreement entered into as of January 7, 1982 between Affholder, Inc., a corporation (Affholder) and Preston Carroll Co., Inc. and CFW Construction Co., Inc., a joint venture (PC/CFW).
 
 
 8
 WHEREAS, PC/CFW is the general contractor for the Pond Creek Interceptor Sewer Job (contract number 692) for the Louisville and Jefferson County Metropolitan Sewer District (MSD), and
 
 
 9
 WHEREAS, Affholder is a subcontractor to PC/CFW for tunnel work under a subcontract dated July 5, 1979, and
 
 
 10
 WHEREAS, Affholder has presented to PC/CFW a claim for extra costs incurred in connection with the execution of the subcontract, based upon changed conditions and/or design errors (the Affholder Claim), and
 
 
 11
 WHEREAS, PC/CFW has investigated the Affholder Claim, questioned the propriety thereof, and interrogated experts in connection therewith, and
 
 
 12
 WHEREAS, PC/CFW has concluded that the Affholder Claim is justified and has been substantiated, and
 
 
 13
 WHEREAS, PC/CFW has a claim (the PC/CFW Claim) by reason of extra costs incurred as a result of the matters which form the basis of the Affholder Claim, and
 
 
 14
 WHEREAS, the parties intend to present their claims to the MSD and desire to provide for the sharing of expenses with regard thereto and to eliminate certain issues from the presentation of the claims in order to simplify the presentation thereof.
 
 NOW, THEREFORE, IT IS AGREED:
 
 15
 1. Affholder agrees that it will not seek recovery from PC/CFW with regard to the Affholder Claim, except to the extent that such claim is recovered from the MSD and/or other third parties.
 
 
 16
 2. PC/CFW agrees that it will not seek recovery from Affholder with regard to the PC/CFW claim, except to the extent that such claim is to be recovered from the MSD and/or other third parties.
 
 
 17
 3. The parties agree that the reasonable costs expended by either of them in connection with expert opinions and/or testimony in connection with the claims will be divided between them as follows: Affholder-75% and PC/CFW-25%.
 
 
 18
 4. Each party will bear its own attorneys' fees in connection with its claim.
 
 
 19
 5. PC/CFW agrees that it will enter its appearance in a suit to be filed by Affholder in the federal court in Louisville, Kentucky, in order to facilitate the joining therein of all parties who are, or might be, appropriate parties thereto.
 
 
 20
 6. This document contains the entire agreement of the parties.
 
 
 21
 On March 23, 1982, in accordance with the agreement, Affholder filed suit against PC/CFW in the United States District Court for the Western District of Kentucky, alleging breach of contract, breach of implied warranty, breach of express warranty and negligence. Affholder sought $2,355,514 in damages from PC/CFW for the additional expenses incurred in completing the tunneling on section PC-4.
 
 
 22
 On June 8, 1982, PC/CFW answered the complaint and counterclaimed for breach of contract, seeking $443,659.97 in damages resulting from Affholder's delay in completing the project. On June 10, 1982, under Fed.R.Civ.P. 14, PC/CFW filed a third-party complaint against MSD, a Kentucky municipal corporation, for indemnity and delay costs. On July 12, 1982, PC/CFW amended its third-party complaint to include the following additional defendants:
 
 
 23
 (1) the members of the VPP joint venture employed to provide management services in conjunction with the investigation, study, design and construction of the project, composed of:
 
 
 24
 (a) Presnell Associates, Inc., a corporation organized and existing under the laws of Kentucky with its principal place of business in Kentucky;
 
 
 25
 (b) James-Winstead & Associates, also organized and existing under Kentucky law with its principal place of business in Kentucky;
 
 
 26
 (c) Pavlo Engineering Company, Inc., a corporation organized and existing under the laws of New York with its principal place of business in New York; and
 
 
 27
 (d) Pavlo Engineering's successor corporation, D.M.J.M., Inc., a corporation organized and existing under the laws of New York with its principal place of business in New York.
 
 
 28
 (2) The H.C. Nutting Company (Nutting), incorporated and having its principal place of business in Ohio, hired by VPP to provide soil testing, sampling and other geotechnical services; and
 
 
 29
 (3) Hubbard E. Ruddy, Consulting Engineers, Inc. (Ruddy), incorporated and having its principal place of business in Kentucky, section engineer for section PC-4.[2]
 
 
 30
 On motion for summary judgment by third-party defendants, the district court dismissed Affholder's claim and PC/CFW's counterclaim as nonjusticiable for lack of a "case or controversy," holding that the litigation agreement between Affholder and PC/CFW had settled Affholder's claim and PC/CFW's counterclaim. Further, the district court dismissed the third-party complaint, holding that (1) no indemnity claim against the third-party defendants could arise because plaintiff Affholder and defendant PC/CFW had already settled and (2) third-party plaintiff PC/CFW had failed to state an indemnity claim against the third-party defendants.
 
 
 31
 Because we find that the district court misinterpreted the litigation agreement and the third-party complaint, we find that this suit does present a justiciable "case or controversy" within the meaning of Article III, Section 2 of the United States Constitution. We therefore reverse and remand.II.
 
 
 32
 "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' or 'controversies.' " Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). Under Article III, the federal judiciary cannot exercise jurisdiction over any alleged dispute in which a judgment will not "touch the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).
 
 
 33
 Settlement of a claim before a final adjudication moots the claim and deprives the federal judiciary of jurisdiction over the claim. See Lake Coal Co. v. Roberts & Schaefer Co., 474 U.S. 120, 106 S.Ct. 553, 88 L.Ed.2d 418 (1985); United Airlines, Inc. v. McDonald, 432 U.S. 385, 400, 97 S.Ct. 2464, 2473, 53 L.Ed.2d 423 (1977) (Powell, J., dissenting) ("The settlement of an individual claim typically moots any issues associated with it."); Stewart v. Southern Ry., 315 U.S. 283, 284, 62 S.Ct. 616, 617, 86 L.Ed. 849 (1942). This lack of jurisdiction "to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam); Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394, n. 3, 11 L.Ed.2d 347 (1964).
 
 
 34
 In interpreting the litigation agreement between Affholder and PC/CFW, the district court held that Affholder and PC/CFW had settled their claims, thus mooting them and thereby eliminating any "case or controversy." However, by holding that Affholder and PC/CFW had settled their claims, the district court misconstrued the litigation agreement. Rather than being a settlement, the agreement was merely a limitation upon the amount of recovery sought by either party.
 
 The litigation agreement provides:
 
 35
 Now, therefore, it is agreed: (1) Affholder agrees that it will not seek recovery from PC/CFW with regard to the Affholder claim, except to the extent that such claim is recovered from the MSD and/or other third parties. (2) PC/CFW agrees that it will not seek recovery from Affholder with regard to the PC/CFW claim, except to the extent that such claim is to be recovered from the MSD and/or other third parties.... (emphasis supplied).
 
 
 36
 With this language, Affholder and PC/CFW merely attempted to limit the scope of recovery for a claim that would be filed and actually was filed. This is supported by other terms in the litigation agreement: "(4) Each party will bear its own attorney's fees in connection with its claim. (5) PC/CFW agrees that it will enter its appearance in a suit to be filed by Affholder in the federal court in Louisville, Kentucky, in order to facilitate the joining therein of all parties who are, or might be, appropriate parties thereto." Contrary to the district court's holding, Affholder and PC/CFW simply agreed to limit the damages that either would recover from each other once a lawsuit was filed: such damages would be limited to the amount that could be recovered from any third parties. Affholder and PC/CFW thus settled neither the issue of liability nor the issue of damages, but simply set a limit upon recoverable damages once liability and damages are adjudicated by the federal court.[3]
 
 
 37
 An agreement such as this, which limits recoverable damages, does not render a suit nonjusticiable as "moot." See Nixon v. Fitzgerald, 457 U.S. 731, 743-44 n. 24, 102 S.Ct. 2690, 2697-98 n. 24, 73 L.Ed.2d 349 (1982) (agreement for alternative liquidated damage remedies contingent upon disposition of qualified immunity claim does not render claim nonjusticiable as moot); Havens Realty Corp. v. Coleman, 455 U.S. 363, 370-71, 102 S.Ct. 1114, 1119-20, 71 L.Ed.2d 214 (1982) (agreement for alternative liquidated damages remedies contingent upon Supreme Court's disposition of petition for certiorari does not render claim nonjusticiable as moot).
 
 
 38
 Moreover, this is not a dispute "of a hypothetical or abstract character" or "one that is academic." Aetna Life Ins. Co., 300 U.S. at 240, 57 S.Ct. at 464. Absent a judgment of liability against PC/CFW, Affholder stands to lose over $2,300,000; absent a judgment of liability against Affholder, PC/CFW must bear a loss of more than $400,000. Clearly, both parties have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). This dispute does present a "clash of adverse parties" in which the parties do not seek "precisely the same result." GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 382-83, 100 S.Ct. 1194, 1199, 63 L.Ed.2d 467 (1980). It is the type of dispute "historically viewed as capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968).
 
 III.
 
 39
 Likewise, the district court dismissed PC/CFW's third-party complaint holding (1) that settlement between Affholder and PC/CFW vitiated any indemnity claim against third parties and (2) that the complaint alleged only a claim against Affholder and not against third parties. However, because the litigation agreement did not settle the claims between Affholder and PC/CFW, any indemnity claim by PC/CFW was justiciable and should not have been dismissed, as long as PC/CFW had properly pleaded its claim.
 
 
 40
 To state a claim for indemnity under Kentucky law, a party must allege (1) that he is subject to liability, (2) that he is exposed to such liability as a result of the actions of another party and (3) that the other party should as a matter of public policy in law or equity be required to pay for the loss. See Long v. Illinois Central Gulf Railroad, 660 F.Supp. 469, 471 (W.D.Ky.1986); Nally v. Boop, 428 S.W.2d 607, 609 (Ky.1968). The district court erred in holding that PC/CFW had failed to plead an indemnity claim.
 
 
 41
 In evaluating the scope of the third-party complaint, the district court cited paragraphs 9 and 18 of the complaint which provide:
 
 
 42
 9. As a direct and proximate result of the delays of Affholder, Inc. in completing their work under the subcontract agreement with third-party plaintiffs, third-party plaintiffs have incurred damages in the amount of $443,659.97 as set forth in a document dated January 26, 1981 and made Exhibit 3 to this Third-Party Complaint and incorporated herein by reference.
 
 
 43
 * * *
 
 
 44
 * * *
 
 
 45
 18. As a direct and proximate result of the delays of Affholder, Inc. in completing their work under the subcontract agreement with Third-Party Plaintiffs, Third-Party Plaintiffs have incurred damages in the amount of $443,659.97, as set forth in a document dated January 26, 1981 which was made Exhibit 3 to the original Third-Party Complaint herein and is incorporated herein by reference.
 
 
 46
 Based upon these paragraphs, the district court held that PC/CFW had failed to allege that the third-party defendants were responsible for any of Affholder's damages, and that PC/CFW had therefore failed to allege a claim for indemnity. However, paragraphs 14, 15, 19, and 20 of the complaint do articulate PC/CFW's claim against third-party defendants:
 
 
 47
 14. Third-Party Defendant MSD delivered to Third-Party Plaintiffs certain contract documents including the Nutting report of Geotechnical Investigation and Vollmer and Ruddy plans and specifications intending that Third-Party Plaintiffs and their subcontractor rely upon the accuracy and correctness of the statements, representations, warranties, findings, conclusions, engineering, testing, design, drawings, plans and specifications contained within the said documents.
 
 
 48
 15. The documents submitted by Third-Party Defendants as part of the contract documents consisted of express and implied warranties as to the accuracy of the matters contained therein.
 
 
 49
 * * *
 
 
 50
 * * *
 
 
 51
 19. Affholder, Inc. has defended against any claim for delay upon the basis that any delays which may have occurred were the direct result of the defective design and misrepresentations of Third-Party Defendants as set forth above.
 
 
 52
 20. If the allegations of Affholder, Inc. in its Complaint against Third-Party Plaintiffs are true, and if Affholder, Inc. is entitled to any judgment on that Complaint against Third-Party Plaintiffs, it is alleged that Third-Party Plaintiffs are entitled to a like judgment against Third-Party Defendants, in that any negligence, breach of warranty, or breach of contract asserted by Affholder, Inc. was the act and responsibility of Third-Party Defendants.
 
 
 53
 In these paragraphs, PC/CFW has alleged misrepresentations by third-party defendants and in paragraph 20 clearly claims that any damages recoverable by Affholder from PC/CFW are attributable to the actions of the third-party defendants, and thus recoverable from those third-party defendants. PC/CFW thus properly stated a claim for indemnity under Kentucky law, and the district court therefore improperly dismissed PC/CFW's third-party complaint.[4]
 
 
 54
 Because the litigation agreement between Affholder and PC/CFW did not render this litigation nonjusticiable as moot, and PC/CFW did articulate a claim for indemnity against the third-party defendants, we REVERSE and REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Albert Engel assumed the duties of Chief Judge April 1, 1988
 
 
 [1]
 This contract was first amended on September 20, 1976, to comply with revised regulations of the United States Environmental Protection Agency. The contract was again amended on September 22, 1977 to reflect changes in the period of contract, the services to be provided, the specific hourly rates of payment, and the upper limit of compensation
 
 
 [2]
 MSD and these parties will be referred to collectively as the "third-party defendants."
 
 
 [3]
 It is at least possible, for example, that PC/CFW might be unable to assert the release contained in the agreement as an affirmative defense to Affholder's suit for $2,355,514, should Affholder demonstrate that PC/CFW has breached the pass-through contract by failing either to cooperate, share litigation costs, or otherwise actively frustrate recovery from the third-parties. The same may equally be observed of PC/CFW's primary claim for $443,659.97 in damages arising from Affholder's delay in completing the project. We cite these possibilities not to suggest their viability or prudence, but to indicate the conditional nature of the litigation agreement and circumstances which may not have been considered by the trial court in reaching its conclusion that the language of the agreement completely barred any recovery on Affholder's claim and PC/CFW's counterclaim
 
 
 [4]
 We also note that state and federal courts almost unanimously permit "pass through" claims such as this, which allow a prime contractor to sue a third party for the benefit of an injured subcontractor. See, e.g., United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); Owens-Corning Fiberglass Corp. v. United States, 419 F.2d 439, 190 Ct.Cl. 211 (1969); J.L. Simmons Co. v. United States, 304 F.2d 886, 158 Ct.Cl. 393 (1962); Mitsui & Co. v. Puerto Rico Water Resources Auth., 528 F.Supp. 768 (D.P.R.1981); J.W. Terteling & Sons v. Central Nebraska Pub. Power & Irrigation Dist., 8 F.R.D. 210 (D.Neb.1948) Ardsley Constr. Co. v. Port of New York Auth., 61 A.D.2d 953, 403 N.Y.S.2d 43 (1978); Buckley & Co. v. State, 140 N.J.Super. 289, 356 A.2d 56 (1975). Although there are differences between these cases and the facts here, these differences appear more procedural than substantive. Kentucky indemnity law may illuminate Kentucky's attitude toward "pass through" arrangements; however, Kentucky courts apparently have yet to assess their validity and we do not endeavor to do so here