**ROBERT LAMB HART PLANNERS AND ARCHITECTS, Plaintiff,**

v.

**EVERGREEN, LTD., Defendant.**

**No. C–1–91–345.**

United States District Court, S.D. Ohio, W.D.

Jan. 9, 1992.

William Eric Minamyer, Clark & Eyrich, Cincinnati, Ohio, for plaintiff.

William Robert Jacobs, Strauss & Troy, Covington, Ky., Jennifer W. Fletcher, Griffin, Cochrane, Marshall & Elger, Atlanta, Ga., for defendant.

## ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

SPIEGEL, District Judge.

This matter is before the Court on the motion of the Plaintiff Robert Lamb Hart Planners and Architects ("Hart") for injunctive and declaratory relief (doc. 1). Also before the Court is the cross motion of the Defendant Evergreen, Ltd. ("Evergreen") to stay the litigation and compel arbitration (doc. 5).

This Court held evidentiary hearings on July 24, 1991, and October 3, 1991, during which both parties introduced evidence and presented oral arguments. Subsequently, both parties submitted Proposed Findings of Fact and Conclusions of Law (docs. 19 and 21). Having now considered the motions, the record evidence, the Proposed Findings of Fact and Conclusions of Law, and the supporting memoranda, we issue this order in accordance with 9 U.S.C. § 4 (1991) (allowing a party to petition a United States district court for the alleged failure of the other party to abide by a written agreement to arbitrate).

### FINDINGS OF FACT

1. Evergreen is a limited partnership in Cincinnati, Ohio.

2. Hart is an architectural firm that does business throughout the country.

3. On September 14, 1984, Hart contracted with Evergreen ("Hart–Evergreen contract"). In the Hart–Evergreen contract, Hart agreed to act as the project

architect for a proposed retirement and care facility (the "Project") which Evergreen was constructing. Defendant's ex. C (exhibits from October 3, 1991 hearing). In return, Evergreen compensated Hart for its architectural services.

4. Article 6 of the contract between Hart and Evergreen states:

6.16.3 All claims, disputes, and other matters in question between the parties to this Agreement, arising out of or relating to this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. No arbitration, arising out of or relating to this Agreement, shall include by consolidation, joinder or in any other matter, any additional person not a party to this Agreement except by written consent containing a specific reference to this Agreement and signed by the Architect, the Owner, and any other persons sought to be joined. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein. This Agreement to arbitrate and any agreement to arbitrate with an additional person or persons duly consented to by the parties to this Agreement shall be specifically enforceable under the prevailing arbitration law.

6.3 The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Defendant's ex. C (exhibits from October 3, 1991 hearing).

5. On October 10, 1984, Evergreen contracted with Monitor Construction Company ("Monitor") to be the general contractor for the Project.

6. Monitor is a Tampa, Florida subsidiary of the construction firm of Dugan & Myers, located in Cincinnati, Ohio.

7. During construction of the Project, Monitor encountered problems. As a result of these problems, Evergreen filed a formal arbitration against Monitor in 1987. Monitor never filed for a formal arbitration against Hart.

8. In its claim at the arbitration, Evergreen asserted that Monitor breached its construction contract by completing the project 175 days late. Evergreen also alleged that Monitor had not properly performed its duties as general contractor on the Project. In 1989, Monitor counterclaimed against Evergreen for the problems it had encountered in constructing the Project.

9. In the Evergreen–Monitor arbitration, Monitor claimed the problems it had encountered on the Project emanated from Hart's allegedly defective architectural plans and specifications. Transcript of October 3, 1991 hearing, at 56; Plaintiff's ex. D (attached to doc. 14). Nevertheless, under the terms of the contract between Monitor and Evergreen, Evergreen was potentially responsible for paying any damages Monitor suffered. *Id.* at 47–50.

10. Hart and Evergreen also had a dispute during the construction of the Project. Evergreen filed for arbitration against Hart, seeking indemnity or contribution under their contract. This is the same arbitration which Evergreen has asked this Court to compel.

11. As a result of the dispute between Hart and Evergreen, Hart left the Project before it was completed.

12. Evergreen sought to consolidate the Evergreen–Monitor arbitration and the Evergreen–Hart arbitration, fearing inconsistent results in the two arbitrations. Hart refused to consent to a consolidation. *Id.* at 48.

13. Evergreen asked the arbitrator to consolidate the two arbitrations. The arbitrator refused, citing Article 6 of the contract between Hart and Evergreen, which specified that "[n]o arbitration, arising out of or relating to this Agreement, shall include by consolidation, joinder or in any other matter, any additional person not a party to this Agreement except by written consent ... of the Architect, the Owner, and any other persons sought to be joined."

14. Evergreen then asked Hart for help in defending the claim that Monitor had filed against Evergreen. Hart refused to voluntarily cooperate in Evergreen's defense. Hart stated that it would participate voluntarily only if Hart received a full and complete release from liability. *Id.* at 47–51, 64.

15. On February 6, 1991, Evergreen and Monitor signed a Settlement Agreement ending all disputes between them. Defendant's Ex. B (exhibits from October 3, 1991 hearing). In this Settlement Agreement, Evergreen assigned to Monitor its rights against Hart. Furthermore, the Settlement Agreement stipulated that Monitor would pursue Evergreen's claims against Hart in the name of Evergreen. *Id.* at 3. Under the Settlement Agreement, Evergreen is entitled to share in any recovery from Hart.[1]

16. On April 24, 1991, Evergreen filed an amended demand for arbitration against Hart. Evergreen added in the amended demand for arbitration that it had been damaged by Hart's breach of contract.

17. Evergreen seeks to compel Hart's participation in an arbitration which would decide if Hart has breached its contract with Evergreen, and whether Evergreen may recover contribution or indemnity from Hart as a result of Evergreen's arbitration with Monitor.

18. Hart filed the matter now before the Court on May 28, 1991. Hart seeks an injunction prohibiting the pending arbitration, or a declaratory judgment stating that Evergreen is not entitled to arbitrate the claims that were assigned to Monitor.

19. Evergreen filed a cross-motion to compel arbitration that is discussed in Findings of Fact 17. Both Hart's and Evergreen's motions are now before the Court.

## CONCLUSIONS OF LAW

In the Hart–Evergreen contract, the two parties agreed to arbitrate disputes arising out of their contract. However, the contract also contained a non-consolidation clause specifying that "[n]o arbitration, arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, any additional person, not a party to this Agreement, except by written consent...." Defendant's ex. C (exhibits from October 3, 1991 hearing).[2] The Hart–Evergreen contract is silent as to whether a party's assignment of rights to a third party violates the contractual provision prohibiting the joinder of an additional party.

The issue now before the Court is whether Evergreen's claims against Hart, which would otherwise be arbitrable, remain arbitrable after being assigned to a third party pursuing those claims in the name of Evergreen. This Court concludes that allowing Monitor to arbitrate Evergreen's claims in Evergreen's name does not violate the contractual provision prohibiting the joinder of an additional party. We base this conclusion upon three reasons: (1) the general policy in favor of arbitration; (2) case precedent; and, (3) public policy.

### Policy in Favor of Arbitration

Congress has supported the resolution of disputes by arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985) (Federal Arbitration Act designed to promote arbitration); *American Centennial Ins. Co. v. Nat'l Casualty Co.,* 951 F.2d 107, 108 (6th Cir.1991) (motivation behind Federal Arbitration Act was to ensure that federal district courts enforced parties' agreements to arbitrate).

As a result of this Congressional policy, " 'a court's function in an action to compel arbitration is limited to [determining] whether the party seeking arbitration is making a claim which on its face is covered by the contract.' " *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.,* 706

---

1. In addition, Evergreen has its own claims against Hart. Hart does not dispute that these claims are arbitrable.

2. This provision in the Hart–Evergreen contract is cited in full in the Court's Findings of Fact 4.

F.2d 155, 160 (6th Cir.1983) (quoting *Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.*, 408 F.2d 606, 609 (2d Cir.1969)).

 Arbitration is a favored method of dispute resolution because of the advantages it offers. Arbitration is speedy, flexible, and efficient in comparison to litigation. *See generally,* Howard O. Hunter, *Modern Law of Contracts* § 10.04[1], at 10–29 (1986) (citing the disadvantages to litigation as opposed to arbitration). Accordingly, this Court examines the cross motions before it in light of the policy favoring arbitration of disputes.[3] Provisions favoring arbitration should be construed broadly; whereas language which limits arbitration must be narrowly construed. Any doubt regarding how to interpret the Hart–Evergreen contract must be resolved in favor of arbitration. *Cincinnati Gas & Elec.*, 706 F.2d 155.

### Case Precedent

Neither party has pointed out controlling case law on the issue before the Court.[4]

 A valid assignment transfers a right from the assignor to the assignee. Thus, after a valid assignment, the assignee possesses the same rights, benefits, and remedies as the assignor once possessed. *See* John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 18–3 at 633, 634 (2d ed. 1977). Most contract rights are freely assignable. E. Allan Farnsworth, *Farnsworth on Contracts* § 11.2 at 61 (1990). The law encourages assignment of rights because "[w]ere the law otherwise, our modern credit economy could not exist." *Id.* However, an assignment is invalid if it is against public policy or if it materially and adversely affects the obligor. *Id.* at 76, 77.

Therefore in light of the general rule allowing assignment, one court concluded that an assignee may pursue the claims of the assignor and enforce the arbitration provisions of a contract. In *Village of Westville v. Loitz Bros. Constr. Co.*, 165 Ill.App.3d 338, 116 Ill.Dec. 447, 519 N.E.2d 37 (1988), *appeal denied,* 119 Ill.2d 576, 119 Ill.Dec. 399, 522 N.E.2d 1258 (1988), an Illinois appellate court considered a case similar to the one before the Court. In *Village of Westville*, the village of Westville hired a general contractor to construct a sanitary sewer system. The contract provided that any disputes arising from the contract should be decided by arbitration. The general contractor on the sewer project proceeded to assign its right to pursue claims against the Village of Westville to a subcontractor. The general contractor also assigned to the subcontractor the right to use its name in pursuit of the general contractor's claims.

Subsequent to the assignment, the subcontractor filed a demand for arbitration against the village of Westville. The *Village of Westville* court held that the subcontractor could arbitrate its dispute with the village of Westville. Thus, the court allowed an assignee to arbitrate claims in the place of an original party to the contract, despite a non-consolidation provision. *Id.* 116 Ill.Dec. at 449, 519 N.E.2d at 39; *see also Ford v. Robertson*, 739 S.W.2d 3 (Tenn.Ct.App.1987) (allowing under Tennessee law the assignment of a cause of action against an architect in construing the identical non-assignability provision as found in the Hart–Evergreen contract).[5]

 In Ohio, a contractor may not sue an architect for economic damages unless privity of contract exists between the architect and the contractor. *Floor Craft Floor*

---

3. Hart acknowledges that "... Ohio courts widely enforce and broadly construe contractual agreements to arbitrate...." Plaintiff's Proposed Findings of Fact and Conclusions of Law, doc. 19, at 11. Hart, however, disputes whether the general policy in favor of arbitration should be applied in the matter before the Court.

4. Nor has the Court found controlling case law in its own research.

5. Moreover, the United States Court of Appeals for the Sixth Circuit has allowed other non-signatories of a contract to enforce the arbitration provisions of a contract. *See Arnold v. Arnold Corp.—Printed Communications for Business*, 920 F.2d 1269, 1281 (6th Cir.1990) (where the parties signed an arbitration provision, a party's agent could enforce the party's right to arbitration).

*Covering, Inc.· v. Parma Community Hosp. Assoc.*, 54 Ohio St.3d 1, 560 N.E.2d 206 (1990). Thus, Monitor could not sue Hart in Ohio for any economic damages that Monitor may have suffered in constructing the Project. Consequently, Hart argues that Monitor is attempting to recover damages using Evergreen's name to circumvent Ohio law under *Floor Craft.*

We disagree. Evergreen alleges that it possessed causes of action against Hart. Indisputably, Evergreen could have submitted these claims to arbitration. Instead, Evergreen assigned these causes of action to Monitor. Monitor is now pursuing those causes of action against Hart in the name of Evergreen. The claims to be arbitrated are only such claims as Evergreen originally had against Hart. Therefore, the Ohio Supreme Court's decision in *Floor Craft* is simply not directly applicable to the case before the Court.

Thus, Evergreen's claims arise out of the Hart–Evergreen contract. Hart is free to raise any substantive defenses it may have against any of Evergreen's claims. However, once we make the determination that the agreement to arbitrate should be enforced, our duty is at an end. We must leave the determination as to the merits of Evergreen's claims to the arbitrator. *See Cincinnati Gas & Elec.*, 706 F.2d 155.

### Public Policy

Under the facts of this case, additional policy considerations favor arbitration of the disputes involved in this case. Both parties agree that some of Evergreen's claims are arbitrable. Consequently, an arbitrator will examine at least some of the disputes involved in this case. If this Court were to enjoin Evergreen from arbitrating Monitor's claims against Hart, then this Court would foster essentially duplicative dispute resolution and risk the possibility of inconsistent results.

Furthermore, this Court promotes the policy of quick and efficient resolution of disputes. In the disputes between Hart,

Evergreen, and Monitor, Hart has not facilitated a quick and efficient resolution of disputes. Evergreen sought to consolidate the Evergreen–Monitor arbitration and the Hart–Evergreen arbitration, fearing inconsistent results in the two arbitrations. Hart refused to consent to a consolidation. Subsequently, Evergreen asked Hart for help in defending the claim that Monitor had filed against Evergreen. Hart refused to voluntarily cooperate in Evergreen's defense. Hart also refused to participate as a witness in Evergreen's defense, unless Hart was released from all liability.[6]

### Indemnification

■ Finally, Hart argues that Evergreen should not be permitted to seek indemnification from Hart, because Evergreen has settled its claims with Monitor. Under their Settlement Agreement, Evergreen paid $126,009.00 to Monitor. Hart contends that this sum of money does not relate to any damages for which Hart may indemnify Evergreen. Hart then concludes that Evergreen, as indemnitee, has suffered no loss and therefore has no cause of action against Hart based on an implied contract of indemnity.

This Court takes heed of the decision by its parent court in *Affholder, Inc. v. Preston Carroll Co.*, 866 F.2d 881 (6th Cir. 1989). In *Affholder*, a general contractor hired a subcontractor for tunneling work on a wastewater treatment project. The subcontractor encountered difficulties in tunneling, which resulted in construction delays and greatly increased costs. The subcontractor sued the general contractor, claiming misrepresentation.

The two parties settled the litigation. In the settlement, the general contractor admitted liability to the subcontractor for the actions of the owner, but the general contractor did not pay any compensation. Instead, the general contractor and subcontractor agreed to seek compensation from the owner and to divide any recovery. The settlement also provided that the subcontractor would limit its recovery from the

---

**6.** Hart stated that it would participate voluntarily only if Hart received a full and complete release from liability.

general contractor to the extent of the two parties' recovery from the owner. *Id.* at 883, 884.

Subsequent to the settlement between the general contractor and the subcontractor, the general contractor filed suit against the owner. The owner claimed that the case was moot, because the case had been settled. The Sixth Circuit rejected this argument, explaining that the general contractor and subcontractor:

> ... simply agreed to limit the damages that either would recover from each other once a lawsuit was filed: such damages would be limited to the amount that could be recovered from any third parties. [The general contractor and subcontractor] ... thus settled neither the issue of liability nor the issue of damages, but simply set a limit upon recoverable damages once damages and liability are adjudicated by the federal court.

*Id.* at 885; *see also id.* at 887 (citing the near unanimity of state and federal courts in permitting litigation agreements, such as the one litigated in *Affholder*).

Like the general contractor in *Affholder*, Evergreen admitted contractual liability to another (Monitor) for the allegedly detrimental acts of a third party (Hart). While Evergreen limited its liability to Monitor for the amount recovered from Hart, Evergreen must still pay Monitor for any amounts that are recovered from Hart. Therefore, Monitor has not released its claim against Evergreen, and Evergreen has properly stated a claim for indemnity against Hart.

## CONCLUSION

We conclude that Evergreen's claims against Hart remain subject to arbitration after being assigned to Monitor who has pursued Evergreen's claims in the name of Evergreen.

Accordingly, this Court denies Hart's request for injunctive relief and grants Evergreen's motion to compel arbitration.

SO ORDERED.