Peoples Pittsburgh Trust Company, Appellant, *v.* Commonwealth.

Argued May 25, 1948. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Thomas D. Caldwell*, with him *Maurice Yoffee* and *Caldwell, Fox & Stoner*, for appellant.

*Horace A. Segelbaum*, Deputy Attorney General, with him *T. McKeen Chidsey*, Attorney General, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, July 6, 1948:

The Auditor General and State Treasurer, the Board of Finance and Revenue, and the Court of Common Pleas of Dauphin County, all held that plaintiff could not recover because its claim was more than balanced by a setoff due to defendant,—a conclusion which, on the undisputed facts presented by the record, was undoubtedly correct.

Ruffsdale Distilling Company for a number of years sold the major portion of its output to the Pennsylvania Liquor Control Board. In 1936 negotiations were entered into for the allowance by the Distilling Company to the Board of so-called "quantity discounts" for that year; the result was that, in correspondence dated April 15 and 16, 1936, the Distilling Company agreed to allow such discounts according to certain specified percentages on purchases made by the Board, and in December, 1937 and January, 1938 the Distilling Company paid the Board the sum of $8,634.72, which was the amount due for such discounts according to the schedule agreed upon.

At the end of the year 1938 the Distilling Company was indebted to the Board for various advertising and service charges in the amount of $9,503.95, but it was very short of funds and it urged the Board to allow it to pay this indebtedness in instalments instead of having it deducted by the Board from the Distilling Company's current invoices; as an argument to support such request it pointed out that some of the other distilling companies had not allowed any quantity discounts,[1] that it was doubtful whether such allowances were not illegal under the Robinson-Patman Act, and that that question was

---

[1] By Act of August 6, 1936, P. L. 92, a four per cent excise tax was imposed on the price of all distilled spirits purchased by the Liquor Control Board, and thereafter attempts of the Board to obtain quantity discounts were discontinued.

then under consideration by the Auditor General and State Treasurer or the Attorney General and a decision in regard thereto could be expected momentarily. Accordingly the Board agreed, in a letter to the Distilling Company dated February 10, 1939, that it would not deduct the $9,503.95 from current payments, but would allow the Distilling Company to liquidate the debt by paying $869.23 at once and instalments of $2,158.68 each on February 28, March 31, April 30, and May 27, 1939. It was stated in the letter that "Deduction of the amount due will not be made from our remittance unless we fail to receive payments as noted above. If it is determined that any portion of the above total claims should not be collected, we will adjust the above schedule of payments." By letter dated March 14, 1939, the Distilling Company accepted this arrangement except that it requested that the first instalment should be deferred to March 28 instead of February 28. It is clear that the phrase "If it is *determined* that any portion of the above total claims should not be collected, we will adjust the above schedule of payments" meant that if, before the instalment payments all became due, a decision was rendered by the Auditor General and State Treasurer or the Attorney General to the effect that the quantity discounts were *illegal,* proper adjustment would be made with the Distilling Company in regard to the payments it had made of such discounts.[2]

---

[2] This is shown by the testimony of the President of the Distilling Company at the hearing before the Auditor General and State Treasurer. He said that he told the representative of the Liquor Control Board that "the quantity discount matter . . . would be subject to a decision on the question which was pending, either before this Board [Auditor General and State Treasurer] or the Attorney General and then, if the decision was against us, we would pay it based on the terms, with the exception of the first payment—a difference in date". He also stated that "We expected the decision to be handed down day by day, hour by hour". Also that his agreement to pay the $8,634.72 in instalments was made "with the assumption and

The sum of $869.23 was paid in accordance with the arrangement thus entered into, but none of the four instalment payments was made, and on September 30, 1939 the Distilling Company went into bankruptcy. On December 21, 1939 the Liquor Control Board deducted from the Distilling Company's account the sum of the unpaid instalments amounting to $8,634.72.

On August 28, September 20 and September 21, 1939 Peoples Pittsburgh Trust Company (now, by merger, Peoples First National Bank & Trust Company) made loans aggregating $9,700 to the Distilling Company, for which it received the latter's notes secured by assignments of invoices for liquor consigned by it to the Liquor Control Board. On April 10, 1942 the Trust Company presented to the Auditor General for settlement its claim against the Board on these invoices in the amount of $7,494.97, which was the balance then due on the Distilling Company's notes. The Board, while admitting liability on the invoices, defended on the basis of the $8,634.72 deduction it had made from the Distilling Company's account and which it now presented as a setoff to the Trust Company's claim.[3]

Testimony having been taken at a hearing before representatives of the Auditor General and State Treas-

with the possibility that the entire quantity discount arrangement was going to be declared illegal . . .". Also that "We discussed whether it was legal or not and that it was before a proper Board for an opinion as to whether or not it was legal". There was no claim or assertion whatever at the time the agreement of February 10 - March 14, 1939 was entered into or even at the time the President of the Distilling Company gave this testimony in April, 1943, that anybody on behalf of the Liquor Control Board had, by a misrepresentation, induced the Distilling Company to allow the quantity discounts.

[3] The setoff it pleaded was actually in the larger sum of $11,376.02; it admitted a total indebtedness to the Distilling Company of $8,705.51, leaving a balance due the Board of $2,670.51. The Court below properly held, however, that the Trust Company was not concerned with any excess of the setoff over and above the amount which cancelled the Trust Company's claim.

urer, the Trust Company on May 10, 1943 filed an amendment to the original statement of its claim in which, in addition to attacking the agreement of April 15-16, 1936 in regard to the allowance of the quantity discounts on the ground that they were discriminatory and illegal under the Robinson-Patman Act because they were not collected from *all* the companies selling liquor to the Board, it was, for the first time, alleged that the making of that agreement was induced by an oral misrepresentation by the then Chairman of the Board to the President of the Distilling Company that all the other distilling companies had agreed to allow such discounts. The Trust Company thus attempted to cancel or overcome the setoff presented by the Board by claiming on its part the amount of the discounts which had, because of such alleged misrepresentation, been improperly paid by the Distilling Company to the Board in 1937 and 1938 in pursuance of the 1936 agreement.

The Auditor General and State Treasurer disallowed the Trust Company's claim and found in favor of the Liquor Control Board. A petition for resettlement being denied, the Trust Company filed a petition for review before the Board of Finance and Revenue; this also was denied and the Trust Company thereupon appealed to the Court of Common Pleas of Dauphin County, which entered a decree dismissing the appeal. The Trust Company has now taken a further appeal to this Court.

Admittedly the Liquor Control Board is indebted on the invoices held by the Trust Company as assignee, but admittedly also the Distilling Company is indebted to the Board in an even greater amount *and was so indebted prior to the time when the Distilling Company made the assignments to the Trust Company as collateral for loans.* We fail to see, therefore, how there can be any question in regard to the right of the Board to setoff this indebtedness against the claim of the Trust Company. "An assignee's right against the obligor is

subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of the assignment, . . ." Restatement, Contracts, § 167 (1) ; *Rider v. Johnson*, 20 Pa. 190; *Marsh, to use, v. Bowen*, 335 Pa. 314, 317, 6 A. 2d 783, 785; *Northwestern National Bank v. Commonwealth*, 345 Pa. 192, 201, 202, 27 A. 2d 20, 25. By the agreement entered into in the letter of February 10, 1939 from the Board to the Distilling Company and the letter of March 14, 1939 from the Distilling Company to the Board it was clearly provided that the indebtedness of $8,634.72 was to be paid by the Distilling Company in instalments ending May 27, 1939, and if the instalments were not so paid the Board was to have the right to deduct the amount due from its remittances to the Distilling Company. The Board subsequently availed itself of this right and is now justified in relying upon it. The attempt of the Trust Company, as assignee of the Distilling Company's invoices, to overcome the Board's setoff by claiming what amounts to a refund of the quantity discount allowances must fail for several reasons: (1) By the agreement entered into in the letters of February 10 and March 14, 1939, the recognition of any claim of the Distilling Company to such a refund was conditioned upon its being determined by the Auditor General and State Treasurer or the Attorney General that the quantity discounts were illegal.[4] No such determination or decision was ever made; on the contrary, the Auditor General and State Treasurer, in settling the Trust Company's claim in May, 1946, held that the agreement for the allowance of the discounts was valid and did not violate the Robinson-Patman Act; therefore the obligation of the Dis-

---

[4] See note 2.

tilling Company to pay the $8,634.72, and the right of the Board to demand it or to assert it as a setoff against the Board's indebtedness to the Distilling Company, became absolute and unconditional. (2) Even if the Chairman of the Board did make any factual misrepresentation which would have entitled the Distilling Company to rescind the agreement of 1936 and seek a refund of the allowances paid thereunder, such right would be one wholly distinct from, and independent of, the agreement of February 10 - March 14, 1939, and could not defeat or impair the right of the Board to recover, or to use as a setoff, the $8,634.72 due it under the terms of the latter agreement. (3) Even if there were any right on the part of the Distilling Company to rescind the agreement in regard to the quantity discounts and to secure a refund of the payments made thereunder, that right would be wholly personal to the Distilling Company and could be invoked by it alone: *McEvoy v. M. Samuels & Sons*, 277 Pa. 370, 373, 121 A. 189, 190; Black on Rescission of Contracts (2nd ed.), p. 1359, § 550; 17 C. J. S. 518, 519, § 165a. (4) Even were the claim for rescission and for refund assignable it was not in fact assigned to the Trust Company, which was the transferee only of the invoices assigned as collateral on the Distilling Company's notes, and if such claim passed to any one it passed to the Distilling Company's trustee in bankruptcy by operation of law, and there is no basis whatever for the Trust Company's assertion of any right in regard thereto: cf. *Morris, for use of Rupp, v. McCulloch*, 83 Pa. 34. (5) Even if the Distilling Company had desired to assert such an alleged misrepresentation as the basis for rescission and refund it would have been incumbent upon it to do so promptly after it had discovered, or by reasonable diligence could have ascertained, that not all the distilling companies had made the quantity discount allowances, and where, as here, the facts are undisputed, the question whether there has been an unreasonable delay is one of law for the court:

*Kinter v. Commonwealth Trust Co.*, 274 Pa. 436, 439, 440, 118 A. 392, 393; *Commercial Car Co., to use, v. W. H. Murphy & Sons*, 275 Pa. 105, 108, 109, 118 A. 641, 642; *McEvoy v. M. Samuels & Sons*, 277 Pa. 370, 373, 121 A. 189, 190; *Selmer v. Smith*, 285 Pa. 67, 70, 131 A. 663, 664, 665; *Grant v. Lovekin*, 285 Pa. 257, 259, 132 A. 342. As already stated, there was not the slightest pretense or intimation on the part of the Distilling Company or the Trust Company that any such misrepresentation had been made until seven years had elapsed after the discount arrangement had been entered into and the money due thereunder had been paid, and no excuse was offered to account for such delay, a circumstance which in itself would defeat the right of rescission. It is not sufficient in such a case for one merely to aver ignorance; there must be an explanation, here wholly lacking, as to why knowledge of the fraud was so belatedly acquired: *Stimson v. Stimson*, 346 Pa. 68, 72, 29 A. 2d 679, 681, 682.

Decree dismissing appeal affirmed, at cost of appellant.