687 A.2d 1167

**Victor P. SMITH, Jr., t/d/b/a Smith Management Group, Appellee,**

**v.**

**CUMBERLAND GROUP, LIMITED, a corporation, and Mass Construction Group, Inc., a corporation, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 3, 1996.

Filed Jan. 21, 1997.

278

Francis M. Socha, Harrisburg, for appellants.

Stephen J. Jurman, Pittsburgh, for appellee.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

KELLY, Judge:

In this appeal, we have been asked to decide whether the trial court properly denied the appellants' preliminary objections and permanently stayed arbitration. Specifically, we must determine whether the arbitration clause contained in a construction contract between an owner and a general contractor who then assigned the contract to another contractor is

invoked in a contract dispute between the owner and the assignee-contractor. For the reasons set forth below, we hold that the arbitration clause is assignable and is therefore invoked in this dispute. Accordingly, we reverse and remand for arbitration proceedings.

The facts and procedural history underlying this appeal may be summarized as follows. Smith Management Group (hereinafter "Smith") as owner and Cumberland Group, Limited (hereinafter "Cumberland") as contractor entered into a contract for renovations and improvements to the "Italian Oven" restaurant in Lancaster, Pennsylvania.[1] Victor P. Smith, Jr. for Smith returned the signed contract, dated August 19, 1994, to Cumberland with a cover letter dated October 28, 1994. According to the terms of the contract, the substantial completion date was to be November 28, 1994. The contract also contained an arbitration clause wherein the parties agreed to arbitrate any disputes between the contractor and the owner arising out of or relating to the contract documents.[2]

1. The contract is an American Institute of Architects "Abbreviated Form of Agreement Between Owner and Contractor for construction projects of limited scope where the basis of payment is the cost of the work plus a fee with or without a guaranteed maximum price." 1987 edition (AIA Document A117).

2. Article 15.8 of the contract provides:

15.8 All claims or disputes between the Contractor and the Owner arising out of or relating to the Contract Documents, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise and subject to an initial presentation of the claim or dispute to the Architect as required under Paragraph 15.5. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, any person or entity not a party to the Agreement under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or

On or about January 1, 1995, Cumberland assigned the contract to Mass Construction Group, Inc. (hereinafter "Mass") as part of the sale of Cumberland's assets to Mass.[3] Mass commenced construction on the Italian Oven project shortly thereafter and substantially completed the project on April 24, 1995. During construction, Mass held weekly construction job conferences at the job site at which Victor P. Smith, Jr. or a Smith representative as well as representatives from Mass were present. Notes from these conferences were sent to Mr. Smith on Mass letterhead. Mr. Smith corresponded directly to Mass concerning construction progress and Mr. Smith signed five progress payment checks made payable to

> entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect or any of the Architect's employees or consultants. The agreement herein among the parties to the Agreement and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

(R.R. at 13–14a).

3. The assignment agreement provides in pertinent part as follows:
> THIS ASSIGNMENT AGREEMENT is entered into this 1st day of January, 1995, by and between the following parties:
> Cumberland Group Limited, hereinafter referred to as "CGL" or "Assignor" of 1707 South Cameron Street, Harrisburg, PA 17104; Mass Construction Group Inc., hereinafter referred to as "Mass" or "Assignee" of P.O. Box 5620, Harrisburg, PA 17110.
> WHEREAS, CGL and Smith Management Group of Routes 30 East & 217, Latrobe, PA, entered into a contract for services dated August 19, 1994 ("Smith Contract"). Copy of this contract is attached hereto as Exhibit "A".
> WHEREAS CGL reserved the rights to assign this contract.
> WHEREAS, the Assignor realized when selling the assets of his construction company that part of the assets being sold to Mass included any outstanding contracts.
> NOW THEREFORE, in consideration of the terms and conditions outlined herein and in the Smith Contract, the parties agree as follows:
>> 1. For the purchase of all fixed assets of CGL and the employment of Thomas J. Flynn, CGL agreed to assign, convey and release all right, title and interest to the Smith Contract, except monies owed for CGL work completed.
> This shall be a binding Agreement between all assigns and nominees of the parties and is confirmed by execution below by their duly authorized representatives.

(R.R. at 22a).

Mass. Mr. Smith withheld payment of the balance to Mass, however, when a dispute arose over the substantial completion date for the project.

On July 17, 1995, Mass filed a demand for arbitration against Smith with the American Arbitration Association pursuant to the terms of the assigned contract. On July 28, 1995, Smith filed a civil complaint against Cumberland and Mass. In Count I of the complaint, Smith averred that Cumberland breached the contract by failing to complete the work within the time provided. In Count II, Smith averred that if Mass performed the contract for Cumberland, then Mass is liable to Smith for damages. On August 30, 1995, Smith filed an application to stay arbitration pursuant to 42 Pa.C.S.A. § 7304(b) [4] claiming Mass was not a party to the contract and that Smith never agreed to arbitrate any claim or dispute with Mass.

Also on August 30, 1995, Cumberland and Mass filed their preliminary objections alleging, *inter alia,* that the trial court should dismiss Smith's complaint because the court lacked jurisdiction due to the contract's arbitration clause voluntarily entered into by the parties and Smith's failure to comply with those mandatory provisions. On the same day, the trial court granted Smith's application to stay arbitration pending argument on the preliminary objections scheduled for November 30, 1995. On February 1, 1996, the trial court filed its opinion and order denying the preliminary objections and continuing the stay granted on August 30, 1995. Cumberland and Mass then filed this timely appeal.

4. The statute provides in pertinent part:

 § 7304. Court proceedings to compel or stay arbitration

 * * * * * *

 (b) Stay of arbitration.—On application of a party to a court to stay an arbitration proceeding threatened or commenced the court may stay an arbitration on a showing that there is no agreement to arbitrate. When in substantial and bona fide dispute, such an issue shall be forthwith and summarily tried and determined and a stay of the arbitration proceedings shall be ordered if the court finds for the moving party. If the court finds for the opposing party, the court shall order the parties to proceed with arbitration.

 42 Pa.C.S.A. § 7304(b).

On appeal, appellants raise the following question for our review:

WHETHER THE [TRIAL] COURT ERRED IN DENY-ING THE PRELIMINARY OBJECTIONS OF THE AP-PELLANTS SEEKING THE DISMISSAL OF THE AP-PELLEE'S COMPLAINT FOR FAILURE OF THE APPELLEE TO SUBMIT THE DISPUTE TO COM-PULSORY ARBITRATION AS REQUIRED IN THE CONTRACT BETWEEN THE PARTIES?

(Appellants' Brief at 6).

■■■ As a matter of public policy, the courts of this Commonwealth strongly favor the settlement of disputes by arbitration. *Langston v. National Media Corporation,* 420 Pa.Super. 611, 615–16, 617 A.2d 354, 356 (1992) (citations omitted); *Dickler v. Shearson Lehman Hutton,* 408 Pa.Super. 286, 294, 596 A.2d 860, 864 (1991), *allocatur denied,* 532 Pa. 663, 616 A.2d 984 (1992). "[W]hen parties agree to arbitration in a clear and unmistakable manner, the court will make every reasonable effort to favor such agreements." *DiLucente Corporation v. Pennsylvania Roofing Co., Inc.,* 440 Pa.Super. 450, 456–57, 655 A.2d 1035, 1038 (1995), *allocatur denied,* 542 Pa. 647, 666 A.2d 1056 (1995) (citing *Hassler v. Columbia Gas Transmission Corporation,* 318 Pa.Super. 302, 307, 464 A.2d 1354, 1357 (1983)). When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so,[5] (2) whether the dispute involved is within the scope of the arbitration provision. *Messa v. State Farm Insurance Company,* 433 Pa.Super. 594, 597, 641 A.2d 1167, 1168 (1994) (citations omitted);

---

5. Pursuant to Pennsylvania's Uniform Arbitration Act:

A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract.

42 Pa.C.S.A. 7303. Although this case involves common law arbitration, several statutory arbitration provisions are applicable. *See* 42 Pa.C.S.A. 7342.

*PBS Coal, Inc. v. Hardhat Mining, Inc.,* 429 Pa.Super. 372, 376–77, 632 A.2d 903, 905 (1993)(citations omitted). "If a valid arbitration agreement exists between the parties and appellants' claim is within the scope of the agreement, the controversy must be submitted to arbitration." *Messa v. State Farm Insurance Company, supra* at 600, 641 A.2d at 1170. An agreement to arbitrate a dispute is an agreement to submit oneself as well as one's dispute to the arbitrators' jurisdiction. Therefore, a party who can establish that he did not agree to arbitrate may be entitled to enjoin an arbitration proceeding. *Gaslin, Inc. v. L.G.C. Exports, Inc.,* 334 Pa.Super. 132, 141, 482 A.2d 1117, 1122 (1984) (quoting *Hoffman v. Gekoski,* 250 Pa.Super. 49, 53, 378 A.2d 447, 448 (1977) (*en banc* ), citing *Flightways Corporation v. Keystone Helicopter Corporation,* 459 Pa. 660, 331 A.2d 184 (1975)).

Arbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exits. *Emlenton Area Municipal Authority v. Miles,* 378 Pa.Super. 303, 307, 548 A.2d 623, 625 (1988), *allocatur denied,* 522 Pa. 613, 563 A.2d 498 (1989) (citing *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 334, 473 A.2d 1005, 1008 (1984)); *Gaslin, Inc. v. L.G.C. Exports, Inc., supra* at 139, 482 A.2d at 1121. Because the construction and interpretation of contracts is a question of law, the trial court's conclusion as to whether the parties have agreed to arbitrate is reviewable by this Court. *Emlenton Area Municipal Authority v. Miles, supra.* Moreover, the threshold question of whether a party agreed to arbitrate a dispute is a jurisdictional question that must be decided by a court. *Patton v. Hanover Insurance Company,* 417 Pa.Super. 351, 356, 612 A.2d 517, 520 (1992); *Gaslin, Inc. v. L.G.C. Exports, Inc., supra.*

Preliminarily, we note that Smith does not argue that he is not a party to the underlying contract, that he did not agree to arbitrate, or that the dispute over the substantial completion date is not within the scope of the arbitration provision. Furthermore, Smith does not claim that the contract with Cumberland was one for personal services and, therefore, was

not assignable. The validity of the contract remains unquestioned. Rather, Smith asserts only that the agreement to arbitrate was not assignable without his consent, which consent he would not have given considering that performance under the contract was already in default when the contract was assigned.

Appellants counter that the contract as a whole as well as the arbitration clause was assignable without Smith's consent and, moreover, that Smith's subsequent actions ratified the assignment. We agree with appellants.

 Absent an express provision against assignment, the rights and duties under an executory bilateral contract which does not involve personal skill,[6] trust, or confidence may be assigned without the consent of the other party so long as it does not materially alter the other party's duties and responsibilities. *Walker v. Mason,* 272 Pa. 315, 318–19, 116 A. 305, 306 (1922); *Galey v. Mellon,* 172 Pa. 443, 446, 33 A. 560, 560 (1896); 6A C.J.S. *Assignments* §§ 29, 31 (1975); Restatement (Second) of Contracts §§ 317, 318, 323 cmt. a (1981). Where an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights. *See Walker v. Mason, supra; Galey v. Mellon, supra;* 6A C.J.S. *Assignments* §§ 73, 88, 89. *See also Wilcox v. Regester,* 417 Pa. 475, 207 A.2d 817 (1965) (assignor's right to performance by obligor is extinguished and assignee acquires similar right to such performance, making assignee real party in interest within Rule of Civil Procedure requiring all actions be prosecuted by real party in interest); *Melnick v. Pennsylvania Company for Banking and Trusts,* 180 Pa.Super. 441, 119 A.2d 825 (1956) (assignor's right to performance extinguished and transferred to assignee). Among these rights are the remedies the assignor once possessed. *See Robert Lamb Hart Planners and Architects v. Evergreen, Ltd.,* 787 F.Supp. 753,

---

**6.** Generally, if mechanical or utilitarian qualities or other criteria readily judged for reasonable completion dominate the contractual duty, then the contract's subject matter is not personal. *See Macke Company v. Pizza Gaithersburg Inc.,* 259 Md. 479, 270 A.2d 645 (1970) (citing *Taylor v. Palmer,* 31 Cal. 240 (1866); *Devlin v. Mayor, Aldermen and Commonalty of the City of New York,* 63 N.Y. 8 (1875)).

757 (S.D.Ohio 1992) (after valid assignment, assignee possesses same rights, benefits, and remedies as assignor once possessed). *See generally Black's Law Dictionary,* 1294 (6th ed. 1990) ("rights" includes remedies).

 Conversely, an assignee's right against the obligor is subject to all of the limitations of the assignor's right, to all defenses thereto, and to all set-offs and counterclaims which would have been available against the assignor had there been no assignment, provided that these defenses and set-offs are based on facts existing at the time of the assignment. *Peoples Pittsburgh Trust Company v. Commonwealth,* 359 Pa. 622, 627–28, 60 A.2d 53, 56 (1948) (citations omitted); *Galey v. Mellon, supra;* 6A C.J.S. *Assignments* § 99; Restatement (Second) of Contracts § 336. Finally, the obligor may ratify an otherwise invalid or ineffective assignment by his conduct. 6A C.J.S. *Assignments* § 68. *See also Purnell v. Atkinson,* 248 Ark. 401, 451 S.W.2d 734 (1970) (restaurant owner ratified assignment of advertising contract where owner knew of assignment and made no objection and knew advertising continued after assignment); *Daniels Insurance, Inc. v. Daon Corporation,* 106 N.M. 328, 742 P.2d 540 (1987) (invalid assignment of right to and interest in cause of action from partnership to one partner may be ratified by parties' subsequent conduct); *Haas v. United States Insulating Corporation,* 65 N.Y.S.2d 497 (1946) (roofing company ratified invalid assignment of roof warranty to new owner of building where roofer made repairs without charge at first request of new owner based on assignment before subsequently refusing to recognize assignment).

Instantly, there is nothing in the underlying contract to indicate personal performance by Cumberland was the inducement or the essence of the contract. *See Galey v. Mellon, supra.* Nor were any limitations as to assignment or arbitration placed on the parties in the broad language therein.[7]

7. We note, however, that Article 15.8 of the contract does require the written consent of a person or entity not a party to the contract before that person or entity can be joined in arbitration unless one of four enumerated exceptions applies. *See* n. 2 *supra.*

Indeed, the language of Article 15.8, which provides for mandatory arbitration of all contractually related disputes, has already been held in previous cases to be "the broadest conceivable language" from which we must conclude that the parties intended "an unlimited arbitration clause." *See Emlenton Area Municipal Authority, supra* at 311, 548 A.2d at 627 (citations omitted).

Upon effective assignment, Mass stepped into Cumberland's shoes and acquired Cumberland's rights and duties as to Cumberland's construction contract with Smith. *See Walker v. Mason, supra; Galey v. Mellon, supra.* In the absence of express exclusions, adopted by the parties, to the broad language referring all issues to arbitration, the provision should be construed as conferring jurisdiction upon the arbitrators to decide the timeliness dispute between Smith and Mass.

 We hold that Cumberland's assignment of its rights and duties under the contract with Smith to Mass was valid and effective. Moreover, we conclude that any question as to the validity or effectiveness of Cumberland's assignment to Mass is moot given Smith's subsequent conduct toward Mass in this case. Smith's on-site construction progress meetings and correspondence directly with Mass and progress payments made payable to Mass constitute sufficient evidence to support a finding that Smith ratified the contract assignment to Mass.

 When parties of equal bargaining positions execute a contact without restrictions on assignability and mutually agree that the resolution of their future disputes, if any arise, should be determined by arbitration, they must be bound by that provision and not be permitted to avoid the consequences of such an action by specious challenges. *See Borough of Ambridge Water Authority v. Columbia,* 458 Pa. 546, 550, 328 A.2d 498, 501 (1974). Here, Smith does not challenge the validity of the underlying contract or the assignment of the contract as a whole. In point of fact, Smith avers in Count II

of his complaint that Mass is liable to him if Mass performed the contract.

Additionally, Smith does not argue that Mass' quality of work is unacceptable or materially altered performance. Instead, Smith seeks to separate out the arbitration clause and attack the effectiveness of its assignment alone because Smith alleges that Cumberland was already in breach before assigning the contract to Mass. Where the contract as a whole remains unchallenged and there is no allegation of fraud, illegality, or mutual mistake as to the arbitration clause specifically, however, Smith's claim must fail. *Cf. Anderson v. Erie Insurance Group,* 384 Pa.Super. 387, 558 A.2d 886 (1989) (holding general attack on contract for fraud or mutual mistake is to be decided under arbitration provision as severable part of contract and only where claim of fraud goes specifically to arbitration provision itself should claim be adjudicated by court rather than arbitrators) (citing *Flightways Corporation v. Keystone Helicopter Corporation, supra*). *See also Pennsylvania Data Entry v. Nixdorf Computer Corporation,* 762 F.Supp. 96 (E.D.Pa.1990) (holding arbitration clause separable from contract and not rescinded by attempt to rescind entire contract) (citing *Prima Paint Corporation v. Flood & Conklin Manufacturing Company,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

Finally, without citing any supporting case law, Smith contends that an arbitration clause should be construed as personal and, thus, nonassignable without the consent of the other original party because of the constitutional and procedural rights that party relinquishes by waiving a jury trial and agreeing to arbitrate. While our research has uncovered no Pennsylvania case law directly on point, we are guided by the decisions of other courts which have held that arbitration clauses are assignable as part of a contract.

We note, for example, that a United States District Court rejected this same argument in *Elzinga & Volkers, Inc. v. LSSC Corporation,* 852 F.Supp. 681, 690 (N.D.Ind.1994) (citing *Asset Allocation & Mgmt. Co. v. Western Employers*

*Ins. Co.,* 892 F.2d 566, 574 (7th Cir.1989)); *I.S. Joseph Co., Inc. v. Michigan Sugar Co.,* 803 F.2d 396 (8th Cir.1986); *Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad,* 789 F.2d 1281 (7th Cir.1986); *Chatham Shipping Co. v. Fertex S.S. Corp.,* 352 F.2d 291 (2d Cir.1965). *See also Elzinga & Volkers, Inc. v. LSSC Corporation,* 838 F.Supp. 1306, 1314 (N.D.Ind.1993) (citations omitted); *Robert Lamb Hart Planners and Architects v. Evergreen, Ltd.,* 787 F.Supp. 753, 757 (S.D.Ohio 1992) (citing *Village of Westville v. Loitz Bros. Constr. Co.,* 165 Ill.App.3d 338, 116 Ill.Dec. 447, 519 N.E.2d 37 (1988)), *appeal denied,* 119 Ill.2d 576, 119 Ill.Dec. 399, 522 N.E.2d 1258 (1988); *Ford v. Robertson,* 739 S.W.2d 3 (Tenn. Ct.App.1987). After acknowledging the plaintiff's position in that case, the *Elzinga* Court continued on to explain, "courts have held that an obligation to arbitrate is not necessarily limited only to those who personally signed the agreement; ordinary contract principles determine who is bound." *Elzinga & Volkers, Inc. v. LSSC Corporation,* 852 F.Supp. at 690 (citing *A/S Custodia v. Lessin Intern., Inc.,* 503 F.2d 318, 320 (2d Cir.1974)). *See also I.S. Joseph Company, Inc. v. Michigan Sugar Company, supra* (validity of assignment, including right to compel arbitration, must be determined by court under common law of contract and assuming valid assignment, assignee could enforce arbitration provision in contract entered into by assignor). Pursuant to Pennsylvania contract law as discussed above, we hold that upon the valid assignment of Cumberland's rights and duties under the contract with Smith to Mass, Mass could enforce the arbitration provision in that contract to settle any disputes within the scope of the arbitration provision with Smith.

Contrary to Smith's assertion otherwise, in no aspect of this case is Smith prejudiced because of our decision to uphold the arbitration clause in the parties' contract, a contract that Smith was free to limit or restrict but did not. Smith retains all of the defenses and counterclaims he had against Cumberland pursuant to the contract before the assignment as well as any he may have against Mass, separately. *See Peoples Pittsburgh Trust Company v. Commonwealth, supra; Galey*

*v. Mellon, supra.* He must raise them, however, in the forum he originally selected.

Based on the foregoing reasons, we hold that a valid arbitration agreement exists between the parties and that appellants' claim is within the scope of the agreement. Accordingly, we reverse the February 1, 1996 order which permanently stayed arbitration, and remand this matter for arbitration proceedings.

Order reversed; case remanded. Jurisdiction is relinquished.