# Heck Family Partnership v.
# Accupac Acquisition Inc.

*Jeffrey A. Lutsky* and *Michael D. O'Mara,* for plaintiffs.

*William A. Harvey, Michael K. Coran* and *Janaki Catanzarite,* for defendant.

JONES II, *J.,* May 23, 2005—This dispute arises from the sale of a business and certain related assets. As part of the sale, the parties executed various agreements, including a purchase agreement and an escrow agreement. The escrow agreement contains an arbitration provision and the purchasing agreement does not. Plaintiffs have filed the instant preliminary objections seeking to compel defendant's counterclaim to arbitration pursuant to the terms of the escrow agreement. In response, defendant has filed a cross-petition to stay arbitration. For the reasons discussed below, plaintiffs' preliminary objections are sustained and defendant's counterclaim is remanded to arbitration. Defendant's cross-petition to stay arbitration is denied.

## BACKGROUND

Plaintiffs are the former owners of Accupac Inc., a now dissolved Pennsylvania corporation that provided outsourced material purchasing, manufacturing and packaging services to the pharmaceutical and personal care industries in the United States. Plaintiffs entered into a purchase agreement with defendant Acquisition.

Pursuant to the terms of the purchase agreement, plaintiffs agreed to sell their business and certain related assets to defendant for approximately $30,000,000.

In addition to the purchase agreement, the parties also entered into an Indemnity Fund Escrow Account agreement (escrow agreement). Pursuant to the terms of the escrow agreement, defendant deposited $3 million in an escrow account. Absent timely receipt of a claim notice by defendant, the escrow funds were to be released to plaintiffs 18 months following the closing. The escrow agreement contains an arbitration provision.

On or about October 4, 2004, defendant submitted a claim notice to the escrow agent alleging plaintiffs breached certain representations and warranties made in connection with the sale of Accupac and that defendant's damages exceeded the available amounts in the escrow agreement, and demanded release of the funds. In response, plaintiffs denied the allegations and objected to the release of the funds.

Plaintiffs subsequently filed a statement of claim with the AAA, seeking a declaration of entitlement to the release of the escrow money. Plaintiffs also commenced this action in equity seeking injunctive relief to prevent Acquisition from canceling plaintiffs' shares of common stock and terminating plaintiffs' entitlement to an appointed representative on Acquisition's board of directors.[1] On November 4, 2004, the court entered a stipulated order that protected plaintiffs' interest as stockholders pending resolution of the parties' disputes.

---

1. Plaintiffs instituted the instant proceeding pursuant to paragraph 22(c) of the escrow agreement.

In response to the equity action, defendant filed a counterclaim against plaintiffs based on plaintiffs' alleged misrepresentations and breaches contained within the purchase agreement. Thereafter, plaintiffs filed preliminary objections to defendant's counterclaim on the ground that the parties' claims and disputes are subject to a mandatory agreement to arbitrate.

## DISCUSSION

The issue presented is whether the arbitration clause embodied in the escrow agreement should be enforced. Pennsylvania law "favors settlement of disputes by arbitration as a means of promoting swift and orderly disposition of claims." *School District of Philadelphia v. Livingston-Rosenwinkel P.C.,* 690 A.2d 1321, 1322-23 (Pa. Commw. 1997) (citing *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 662-63, 331 A.2d 184, 185 (1975)).

A court's analysis of whether a claim is required to be arbitrated is limited. Our Superior Court has held:

"When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision." *University Mechanical & Engineering Contractors Inc. v. Insurance Co. of North America,* November term 2000, no. 1554 (October 28, 2002) (Sheppard, J.) (citing *Midomo Co. Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 186 (Pa. Super. 1999) (quoting *Smith v. Cumberland Group Ltd.,* 455 Pa. Super. 276, 283, 687 A.2d 1167, 1171 (1997))).

Thus, some determinations relating to whether a case should be arbitrated are to be made by the court, but others are to be resolved by an arbitrator. "The question of whether the parties agreed to arbitrate, commonly referred to as 'substantive arbitrability,' is generally one for the courts and not for the arbitrators .... On the other hand, resolution of procedural questions, including whether the invocation of arbitration was proper or timely is left to the arbitrator." *Ross Development Co. v. Advanced Building Development Inc.,* 803 A.2d 194, 196 (Pa. Super. 2002).

For matters of substantive arbitrability, a court must apply two principles: "(1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute." *Midomo,* 739 A.2d at 190. To apply both rules, the court should employ the rules of contractual construction, "adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties." *Midomo* at 190-91.

Here, there are two agreements at issue—the purchasing agreement and the escrow agreement—but only the escrow agreement contains an arbitration clause. After reviewing the purchase agreement and the escrow agreement as well as taking into consideration the parties' respective positions, this court finds that the defendant's counterclaim should be remanded to arbitration.

The first issue that must be resolved in determining whether defendant's counterclaim is subject to arbitration is whether the purchase agreement and the escrow agreement are interrelated and interdependent or independent agreements.[2] It is a general rule of contract law that, where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole. There is not "any requirement that a contract be evidenced by a single instrument" and "[i]f contracting parties choose, they may express their agreement in one or more writings and, in such circumstances, the several documents are to be interpreted together, each one contributing (to the extent of its worth) to the ascertainment of the true intent of the parties." *International Milling Co. v. Hachmeister Inc.,* 380 Pa. 407, 417-18, 110 A.2d 186, 191 (1955). (citation omitted)

A review of the two contractual instruments here, the purchase agreement and the escrow agreement, illustrates that the two agreements form a single unified expression of the dealings between the parties. The escrow agreement specifically refers back to the purchase agreement. (See escrow agreement recital and ¶4.) The recital to the escrow agreement also specifically provides that terms used but not defined in the agreement (escrow) shall have the meanings given them in the purchase agreement. (Escrow agreement ¶1, recital.) Additionally, the terms of the escrow agreement also provide that the purchase

---

2. This inquiry is necessary since the purchase agreement does not contain an arbitration provision. Thus, it is necessary to resolve the question of whether the agreements are interdependent and interrelated in order to determine whether any breaches resulting from the purchase agreement are subject to arbitration.

agreement shall govern and control in the event of any inconsistency or conflict with the escrow agreement. (Escrow agreement, p. 2, ¶1.)[3] Notably, section 11(c) of the purchase agreement states that the purchase agreement and the escrow agreement constitute the entire agreement among the parties. (Purchase agreement ¶65 section 11(c).)

The interdependence and interrelation between the two agreements can also be illustrated by the fact that the escrow agreement exists solely because of the purchase agreement. Indeed, a form of the escrow agreement to be adopted by the contracting parties was attached as an exhibit to the purchase agreement. All these factors lead this court to conclude that the two agreements concern a single transaction and that they must be read together in determining the intention of the parties. As such, the court concludes that a valid agreement to arbitrate exists between the parties.

The court is now left to decide whether the instant dispute falls within the scope of the arbitration provision. The escrow agreement's arbitration clause provides:

"Any controversy or claim arising out of or relating to this agreement, or the breach hereof, or any unilateral disbursement request or claim notice, shall be settled by arbitration in accordance with commercial rules of the American Arbitration Association. Arbitration proceedings conducted pursuant to this paragraph 22 shall be held in Philadelphia." (Escrow agreement ¶22.)

---

3. The court does not find any inconsistency or conflict between the purchase agreement and the escrow agreement.

Defendant's counterclaim purports to allege claims for fraud and breach of contract and seeks declaratory relief since plaintiffs breached representations and warranties contained within the purchase agreement.[4] The parties anticipated the likelihood of a breach and executed the escrow agreement, which required defendant to place in escrow the sum of $3,000,000 of the purchase price for the purpose of securing plaintiffs' obligations under section 9(b) of the purchase agreement. (Escrow agreement recitals (a).) Section 9 of the purchase agreement provides the remedies available for breaches arising from the purchase agreement. Section 9(b) obligates the shareholders, HFP and MPLP, to indemnify defendant for any breach, violation or misrepresentation of any shareholders, HFP and MPLP, contained within the purchase agreement, schedule or exhibit or in any document to be delivered at closing. (Purchase agreement ¶9(b) p. 60.)

The escrow agreement sets forth the procedure to be followed in the event a dispute arises as to whether a disbursement should be made from the escrow fund. (Escrow agreement ¶4(b).) According to the escrow agreement, in the event of a dispute, a disbursement shall not occur until (1) the representative accepts such disbursement or (2) until there has been a delivery of a written notice of final determination of the amount of such ad-

---

4. Specifically, defendant alleges that plaintiffs made misrepresentations concerning wage and hour compliance with immigration laws, concerning title to certain personal property, concerning the condition of certain machinery, concerning the ability to fulfill customer orders, concerning the shareholders' role in management of the company, and that plaintiffs have failed to honor their indemnification obligations regarding third-party claims.

verse consequences. *Id.*[5] Final determination is defined as *an award determined by the arbitrator, pursuant to section 23 [sic]* which sets forth the amount of the adverse consequence to be satisfied by the disbursement from the escrow fund as finally determined in accordance with section 9(b) of the purchase agreement. (Escrow agreement ¶4(f).) Section 9(b) also sets out in detail the remedies available to the parties, including limitations on liability depending upon the nature of the claim. Section 9(g) of the purchase agreement also sets out in detail the method in which the indemnity claim should be satisfied; the escrow funds inability to fully satisfy any indemnity sum was also taken into consideration.

The escrow agreement's arbitration clause provides that *any controversy or claim arising out of or relating to this agreement,* or the breach hereof, *or any unilateral disbursement request or claim notice, shall be settled by arbitration* in accordance with commercial rules of the American Arbitration Association. Defendant's counterclaim pertains directly to alleged misrepresentations made by the shareholders, HFP or MPLP, which are contained in sections 3 and 4 of the purchase agreement. The escrow fund was created purposefully to secure plaintiffs' indemnification obligations arising as a result of misrepresentations made by plaintiffs. (See purchase

---

5. Adverse consequences is defined in the purchasing agreement as all actions, suits, proceedings, hearings, investigations, charges, complaints, claims, demands, injunctions, judgments, orders, decrees, rulings, damages, dues, penalties, fines, costs, amounts paid in settlement, liabilities, obligations, taxes, liens, losses, expenses, and fees, including court costs and reasonable attorneys' fees and expenses and any other cost of enforcing a party's rights under this agreement. (Purchase agreement, definitions p. 2.)

agreement ¶9(b).) Since defendant's counterclaim involves a controversy or claim arising from a unilateral disbursement request and claim notice, since the disbursement request arises from transactional misrepresentations for which a remedy is provided by section 9(b), and since the escrow fund was created to secure obligations pursuant to section 9(b), the court finds that defendant's counterclaim falls within the scope of the arbitration provision contained within the escrow agreement.

In reaching this conclusion the court does not find defendant's reliance upon paragraph 11(o), submission of jurisdiction, which gives exclusive jurisdiction to decide disputes to state or federal courts in Philadelphia, Pennsylvania, persuasive. The court finds this provision to be jurisdictional in nature which does not foreclose the use of arbitration as an alternative dispute mechanism.

Defendant also argues that the arbitrator has no authority to determine defendant's claims or plaintiffs' claims since it is possible that the claims could have been asserted after the escrow account had been liquidated and since the escrow funds are not the sole source of recovery. The court does not agree. Paragraph 17 of the escrow agreement states that the agreement (escrow) shall terminate the earlier of the date that no funds remain in the escrow account, the distribution of the entire escrow account pursuant to section 4 of the escrow agreement and the mutual written consent of the parties. (Escrow agreement ¶17 p. 7.) Excluded from this provision is paragraph 22, the arbitration provision. Thus, the arbitration provision of the escrow agreement will survive even if no funds remain in the escrow account. This provision lends further support to the court's conclusion that defendant's counterclaim is subject to arbitration.

## CONCLUSION

For the foregoing reasons, plaintiffs' preliminary objections are sustained. Defendant's counterclaims are remanded to arbitration and this matter is stayed pending the completion of arbitration. Defendant's cross-petition to stay arbitration is denied. An order consistent with this opinion will follow.