NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1808
_____

6060 CORPORATION,
formerly known as
Norman Spencer McKernan, Inc.
v.

MEDMARC CASUALTY INSURANCE GROUP COMPANY,
doing business as Medmarc Insurance Group

MEDMARC CASUALTY INSURANCE GROUP COMPANY,
                                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-03659)
District Judge:  Honorable Legrome D. Davis
_____

Submitted Under Third Circuit LAR 34.1(a)
October 29, 2013

Before: FISHER, JORDAN and SLOVITER, *Circuit Judges*

(Filed: November 7, 2013)
_____

OPINION
_____

SLOVITER, *Circuit Judge.*

Medmarc Casualty Insurance Company (Medmarc), appellant, contracted with the Administrators for the Professions of Delaware (AFPD), not a party, to handle certain professional liability insurance policies. Later, AFPD assigned its rights under the agreement with Medmarc to 6060 Corporation (6060), appellee. The instant action arose when Medmarc demanded that 6060 arbitrate a dispute over a malpractice claim, pursuant to the arbitration clause in Medmarc's agreement with AFPD. 6060 filed for a declaratory judgment that it was not bound to arbitrate. The District Court declared that 6060 did not acquire liability for the specific claim at issue and was thus not bound to arbitrate disputes relating to the claim. Medmarc timely appeals, arguing that the District Court erred in deciding that 6060 was not bound to arbitrate and that it exceeded the scope of relief requested by determining that 6060 did not acquire substantive liability for the claim. For the reasons that follow, we will affirm.[1]

I.

On September 1, 2002, Medmarc entered into the Program Managers Agreement (PMA) with AFPD. Under the PMA, AFPD was responsible for underwriting and servicing certain of Medmarc's professional liability policies. The PMA also contained an arbitration clause under which the parties agreed that "[a]ny dispute arising out of [the PMA] shall be submitted to the decision of a board of arbitration . . . ." App. at 90.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. This court has jurisdiction over the final order of the District Court pursuant to 28 U.S.C. § 1291.

2

In March 2006, a law firm insured by Medmarc, the McCormick Firm, filed a claim with AFPD (the "McCormick Claim") in connection with an impending malpractice suit. AFPD denied the claim, and the McCormick Firm sought alternate representation in the proceedings. In August 2009, Medmarc and AFPD terminated the PMA with respect to new claims. AFPD remained responsible for handling certain run-off work "that was already in the pipeline."

On August 31, 2011, AFPD sold essentially all of its assets, including the right to service the run-off work under the PMA, to 6060, pursuant to the Asset Purchase Agreement (Purchase Agreement). Under the Purchase Agreement, 6060 only acquired some of AFPD's liabilities, including liabilities relating to the PMA "arising on or following" the August 31, 2011 closing date of the purchase. App. at 146.

On December 1, 2011, Medmarc took back responsibility for all the run-off work. Thus, 6060 only handled run-off work under the PMA from August 31, 2011, when it purchased the rights from AFPD, to December 1, 2011, when Medmarc took back responsibility for the remaining run-off work.

In November 2011, the malpractice action underlying the McCormick Claim went to trial, and a judgment of $5 million was entered against the McCormick Firm in March 2012. Medmarc sought indemnity from both 6060 and AFPD. When both companies denied indemnification, Medmarc paid for and posted the appeal bond for the judgment, and demanded that AFPD and 6060 arbitrate the dispute over the claim. In response, 6060 filed a complaint in the District Court seeking a declaratory judgment that it was not obligated to arbitrate the dispute and also seeking to enjoin Medmarc from pursuing a

3

claim against it in arbitration. After limited discovery, both parties filed motions for summary judgment.

The District Court granted summary judgment in favor of 6060. It concluded that 6060 had expressly contracted in the Purchase Agreement to only assume liability for claims relating to the PMA arising on or after August 31, 2011. Because the District Court concluded that the McCormick Claim arose well before that date, it held that 6060 is not bound to arbitrate the claim.

## II.

This court exercises plenary review over an order granting summary judgment. C*urley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002). In reviewing such an order, we apply the same standard that the District Court should have used initially. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is only appropriate when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). To defeat a motion for summary judgment, the nonmovant must adduce sufficient facts "to enable a jury to reasonably find for the nonmovant on the issue." *Id.* We exercise plenary review over the District Court's interpretations of state law. *Horsehead Indus. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001).

## III.

Medmarc makes three arguments: first, that the District Court erred in concluding that 6060 was not bound to arbitrate; second, that the District Court should not have resolved the factual issue of whether 6060 assumed substantive liability for the

4

McCormick Claim; third, that the District Court exceeded the scope of the requested relief by holding that 6060 did not acquire liability for the McCormick Claim.

A.

First, Medmarc argues that the District Court incorrectly ruled that 6060 is not bound to arbitrate the parties' dispute over the McCormick Claim. Medmarc's demand to arbitrate is governed by the Federal Arbitration Act (FAA). 9 U.S.C. § 1 *et seq.* The question of whether parties have agreed to arbitrate is one for judicial resolution. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855-56 (2010); *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013). To determine whether arbitration is required, we conduct a two-step inquiry. First, we decide whether a valid agreement to arbitrate exists. Second, we decide whether the instant dispute falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Generally, there is a "presumption in favor of arbitrability." *Id.* However, this presumption should only be applied once we determine that the parties intended to arbitrate and there exists a validly-formed agreement to arbitrate. *Granite Rock*, 130 S. Ct. at 2858-59. Ultimately, we must be "satisfied that the parties agreed to arbitrate *that dispute.*" *Id.* at 2856 (emphasis in original).

6060 argues that it cannot be held to any of the terms of the PMA because that agreement required Medmarc to approve any assignment of the contract in a signed writing, which Medmarc never did. However, Virginia law, which governs the PMA, follows the Restatement rule, pursuant to which a ban on assignment only protects the obligor, in this case Medmarc. *See, e.g, Bell BCI Co. v. Old Dominion Demolition Corp.*,

5

294 F. Supp. 2d 807, 812-13 (E.D. Va. 2003) (citing Restatement (Second) of Contracts § 322 (1981)). In other words, "only [Medmarc], not [6060], has standing to object to the absence of a writing reflecting [Medmarc]'s approval of the assignment." *Id.*

6060 also argues that it cannot be held to the arbitration clause in the PMA because it was not a party to that agreement, which was between only Medmarc and AFPD. However, we have recognized that under prevailing contract law principles, non-parties can be bound to arbitration clauses under certain circumstances. *See Trippe Mfg.*, 401 F.3d at 533. When a contractual right is assigned in a purchase agreement, we look to the law governing the purchase agreement to determine whether any associated duty to arbitrate follows the assignment of the right. *See id.* at 532 (describing a situation similar to the instant case). Under Pennsylvania law, which governs the Purchase Agreement, when an assignee assumes liabilities arising out of a contract, the assignee can be bound by an arbitration clause, or other remedial measure, associated with that liability. *See, e.g., Cecil Twp. Mun. Auth. v. N. Am. Specialty Sur. Co.*, 836 F. Supp. 2d 367, 385 (W.D. Pa. 2011); *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167 (Pa. Super. Ct. 1997); *see also Trippe Mfg.*, 401 F.3d at 532-33 (analyzing an assignment under similar New York law). Schedule 1.1A of the Purchase Agreement lists the "Medmarc Program Administrator Agreement" (the PMA) as one of the "Client Contracts" acquired by 6060 as an asset from AFPD. Thus, as the District Court correctly noted, whether 6060 can be bound by the arbitration clause in the PMA with respect to the McCormick Claim turns on the issue of whether, under Pennsylvania law, 6060 assumed substantive liability for the McCormick Claim in the Purchase Agreement.

6

Section 1.2(i) of the Purchase Agreement makes clear that 6060 only contracted to assume those "liabilities and obligations arising on or following [August 31, 2011] in connection with or in relation to [the PMA] . . ."  Also, 6060 explicitly disclaimed any liability "resulting from or arising out of any default, or nonperformance by [AFPD] of any Assumed Liability prior to [August 31, 2011] . . . ."  App. at 146.

We do not need to decide when precisely the McCormick Claim "arose," but only whether it did so between August 31, 2011, when 6060 took over liabilities from AFPD, and December 1, 2011, when Medmarc took back responsibility for all of the remaining run-off work.  The McCormick Firm informed AFPD of the malpractice action underlying the claim as early as March 13, 2006.  AFPD denied and closed the McCormick Claim in January 2007.  AFPD received a copy of the amended complaint in the malpractice action, and drafted a letter acknowledging a duty to provide a defense that it never sent to the McCormick Firm, in February 2007.  Plaintiffs in the malpractice action contacted AFPD to discuss a possible settlement in January 2009.  These events all happened before August 31, 2011.  The $5 million judgment was issued in March 2012, after Medmarc took back the run-off work.  The only event of substance to happen between August 31, 2011 and December 1, 2011 was that the suit underlying the McCormick Claim went to trial in November, 2011.  But the date of trial is not significant as to when the claim "arose," because neither Medmarc nor 6060 had any involvement with the claim at that point.  The only reasonable view of these facts is that the claim "arose" when the McCormick Firm first sought representation from AFPD in connection with the suit in 2006 or 2007, or alternatively "arose" in 2012 when the

7

McCormick Firm sought indemnification for the $5 million judgment. Under either characterization, the McCormick Claim would fall outside the scope of liabilities that 6060 agreed to acquire from AFPD in the Purchase Agreement. Therefore, because 6060 did not acquire responsibility for the McCormick Claim from AFPD, it cannot, under Pennsylvania law, be bound to arbitrate disputes relating to that claim.

B.

Next, Medmarc argues that the District Court improperly ignored a material factual dispute over whether 6060's obligations related to the McCormick Claim continued past August 31, 2011. As discussed, *supra*, the facts compel the conclusion that the McCormick Claim did not arise within the required time period, and the law compels the conclusion that 6060 did not assume responsibility for the claim.

The District Court properly treated Medmarc's evidence as to 6060's continuing obligations related to the McCormick Claim as immaterial. The Purchase Agreement clearly states that 6060 only assumed liabilities "arising" on or after August 31, 2011. Medmarc's evidence, which speaks only to any obligations 6060 might have had in servicing or administering the McCormick Claim after August 31, 2011, is simply not relevant to the question of when the claim arose. The standard for summary judgment requires Medmarc to adduce sufficient facts "to enable a jury to reasonably find for [Medmarc] on the issue." *Giles*, 571 F.3d at 322. Once the immaterial facts are stripped away, Medmarc cannot make the required showing.

8

## C.

Finally, Medmarc argues that the District Court went beyond the scope of the relief requested by 6060 in its petition for declaratory judgment by determining that 6060 did not assume substantive liability for the McCormick Claim. Medmarc further argues that the District Court's judgment will have a preclusive effect on any future action Medmarc chooses to bring against 6060 on the substance of the claim.

In *Trippe*, this court noted that when an assignee's duty to arbitrate arises out of that assignee's assumption of an obligation under a purchase agreement, then the "agreement to arbitrate . . . is coextensive with the substantive obligations assumed by [the assignee] under the [purchase agreement]." *Trippe Mfg.*, 401 F.3d at 533. Therefore, a court cannot determine the extent of the duty to arbitrate without first reaching some conclusion as to the substantive obligations assumed by the assignee. Thus, the District Court did not err in reaching this issue, even if doing so prejudiced Medmarc's future attempts to hold 6060 liable for the McCormick Claim.[2]

## IV.

For these reasons, we will affirm the District Court's grant of summary judgment.

---

[2] Of course we make no finding either way as to 6060's substantive liability other than what is necessarily required by our analysis of whether 6060 is bound to arbitrate.

9