OPINION OF THE COURT
Joseph J. Maltese, J.
This court has denied the plaintiff bank’s summary judgment motion in a mortgage foreclosure action because it has found that the original lender has violated the “predatory lending” statutes found in Banking Law § 6-1. As a result of the findings of violations of the predatory lending sections of the Banking Law this court grants the defendant homeowner summary judgment wherein he may be entitled to damages to include the voiding of the mortgage and loan, along with the return of all mortgage payments, the expenses of obtaining the loans and attorney fees.
Facts
In the summer of 2005, after living in a rental home for three years, the Shearons, as first time home buyers, decided to purchase a house in Staten Island, New York. After searching for the “right” home, they executed a contract of sale for real property located at 33 Westport Lane in Staten Island, New York.
To locate this home, the Shearons utilized the services of a real estate agent from Coldwell Banker. After finding their home, they utilized the services of Glen DeLuca and Michael Farber, mortgage brokers associated with Liberty Capital Mortgage,[1] to provide them with all necessary financial information and potential lenders in order to obtain financing for the purchase. In August and September 2005, Michael Farber advised the Shearons that they would qualify for traditional loan products with fixed interest rates and that he was “shopping around for the best rates.” At the time the Shearons were applying for financing, as husband and wife, in connection with purchasing their home, David Shearon’s credit score was 696 *435 and Karen Shearon’s credit score was 760 on a scale where 800 is the maximum score.
The Shearons presented a joint tax return which shows a combined adjusted gross income of $29,567.[2] On October 17, 2005 the Shearons entered into a contract of sale to purchase the house for $335,000. However, the contract listed a purchase price of $355,100 with a “Seller’s Concession” of $20,100. At the execution of the contract, the Shearons deposited $5,000 with the seller’s attorneys, which would leave a balance of $350,100. But the financing was for the full $355,000, implying that it would be a “no money down” purchase at closing where arguably that amount should have reflected a deduction of the $5,000 deposit that the Shearons paid at the contract signing.
From the time of the contract until closing in January 2006, Michael Farber advised the Shearons that WMC Mortgage Corp. would be able to finance the entire $355,100 of the purchase price in two loans. The plaintiff, LaSalle Bank, N.A. (hereinafter lender) was the trustee and successor for WMC. The first mortgage was for $284,000 and the second mortgage was for $71,000. The closing for the subject property occurred on or about January 27, 2006. However, David Shearon was listed as the sole purchaser and sole borrower on all closing documents.
Shearon, in his answer, alleges that he has been the victim of ‘ ‘predatory lending” practices by the mortgage brokers and the lender regarding the finance of his home. Shearon alleges the following six separate and distinct acts to justify his claim of predatory lending:
1) Excessive financing was approved and extended to 106% of the purchase price, which permitted Shearon to finance the points, broker fees and costs;
2) Improper, inadequate or nonexistent lender due diligence regarding Shearon’s ability to repay the high cost home loan given;
3) The intentional and improper placement of Shearon into subprime loan products with excessively high interest rates, longer loan terms and impaired refinancing flexibility to the sole benefit of the lender;
4) Absent or inadequate state and federally mandated truth-in-lending (TILA) disclosures regarding material elements of the financing being obtained, including, without limitation, *436 matters relating to closing costs and fees, counseling services, loan terms, amortization schedules and balloon payment requirements;
5) Forgeries of numerous loan-related documents, including without limitation (i) the residential loan application, dated November 7, 2005; (ii) the undated “Addendum to Contract .of Sale”; and (iii) the “Request for Verification of Rent,” dated January 3, 2006 (purportedly signed by Jennifer Ogman) reflecting inaccurate information used to underwrite the loans; and
6) The employment of repeated and continuous coercive and concerted tactics by plaintiff and other nonparties who stood to benefit from the loan process, which successfully targeted and forced Shearon to close on the loans and the property or face significant and dire financial consequences (i.e. losing the loan commitment, defaulting under the purchase contract, losing the down payment/deposit).
New York Banking Law
Predatory lending practices are prohibited by both New York State and federal laws. Here, the “home loans”[3] in question are governed by Banking Law § 6-1 (1) (d) which governs “high-cost home loans” which are classified as such by the scheme provided for in Banking Law § 6-1 (1) (g). Banking Law § 6-1 (2) prohibits certain practices by lending institutions when offering high cost loans. The statute also provides for a six-year statute of limitations accruing from the origination of the loan,[4]
[5]as well as remedies for violations of the statute.® A court may also award reasonable attorney fees to the prevailing borrower.[6] And the court may grant the borrower injunctive, declaratory and such other equitable relief to enforce compliance with this section.[7]
However, the most drastic remedies provided are found in subdivisions (10) and (11) of the statute. Banking Law § 6-1 (10) states:
“Upon a finding by the court of an intentional violation by the lender of this section, or regulation thereunder, the home loan agreement shall be rendered void, and the lender shall have no right to collect, receive or retain any principal, interest, or *437 other charges whatsoever with respect to the loan, and the borrower may recover any payments made under the agreement.”
Banking Law § 6-1 (11) states: “Upon a judicial finding that a high-cost home loan violates any provision of this section, whether such violation is raised as an affirmative claim or as a defense, the loan transaction may be rescinded. Such remedy of rescission shall be available as a defense without time limitation.”
Discussion
Shearon is alleging that he is the victim of “predatory lending” defined by Banking Law § 6-1. Specifically, Shearon alleges that he was given excessive financing on a high cost loan without the lender’s inquiry as to his ability to pay, which is mandated by Banking Law § 6-1 (2) (k). The lender alleges that loans of 7.65% and 10.5% are less than the 16% usury statute and hence are not “high cost” loans. But the home loans were considered high cost loans by the lender because the lender prepared the following forms dated December 8, 2005: a New York high cost loan disclosure; New York high cost loan payment disclosure; and New York high cost loan insurance.
It is undisputed that Shearon was given $355,000 to finance the purchase of a $335,000 house, where the extra $20,000 or 6% of the purchase price was used to pay points and fees associated with the closing on the property. Specifically, when examining the HUD-1 closing statement prepared at the time of closing, it is apparent that $19,145.69 was used to pay all costs and fees associated with securing the high cost loans. These monies were paid from financing received above and beyond the contract price of $335,000. This ultimately left Shearon with negative equity in the property.
The financing of the fees and points associated with the loan is also a violation of Banking Law § 6-1 (2) (m), which states: “In making a high-cost home loan, a lender shall not, directly or indirectly, finance any points and fees as defined in paragraph (f) of subdivision one of this section, in an amount that exceeds three percent of the principal amount of the loan” (emphasis added).
Here, the amount financed to cover the fees is in violation of the statute because the points and fees exceed 3% of the principal amount of the loan. Three percent of the loan equates *438 to $10,650. However, the expenses of the loan were $19,145.69, which equates to about 5.4% ($19,145.69 $355,000 = .0539) which is more than the 3% allowed by the statute. What is more egregious is that $19,145.69 in expenses is 5.72% of the original cost of the $335,000 house ($19,145.69 + $335,000 = .0572).
Shearon also alleges that the lender did not conduct a “due diligence” inquiry or any inquiry into their ability to repay the high cost loan. The plaintiff argues in its motion for summary judgment that David Shearon stated that he reported $7,200 as monthly income when he first applied for the loan. The plaintiff then states in paragraph 25 of their attorney’s affirmation that Mr. Shearon “cannot argue that his annual income of $86,400 places him in a category of low-income.”
If David Shearon and his wife stated on the original loan application that their monthly income was $7,200, the lender’s statutory requirement is to make an inquiry as to the truth of the statement and the borrower’s ability to repay the loan. While this court will not condone fraud by the borrower, Banking Law § 6-Z (2) (k) states:
“A lender or mortgage broker shall not make or arrange a high-cost home loan without due regard to repayment ability, based upon consideration of the resident borrower or borrowers’ current and expected income, current obligations, employment status, and other financial resources (other than the borrower’s equity in the dwelling which secures repayment of the loan), as verified by detailed documentation of all sources of income and corroborated by independent verification.” (Emphasis added.)
Here, plaintiffs counsel states in both the moving papers and reply papers that
“Based on Defendant’s income, credit history, and the low interest rate on the Mortgage loan, along with the Defendant’s lack of evidence supporting predatory lending, the Defendant is precluded from alleging the same. As such, the Defendant’s mortgage loan was in compliance with all applicable laws, including, but not limited to, all anti-predatory lending laws.”
*439 While statements contained in an attorney’s affirmation are not proper evidence before the court,[8] the plaintiff does not offer one scintilla of evidence as to its required “due diligence” inquiry regarding David Shearon’s ability to pay, which is a violation of New York’s Banking Law governing high cost loans.
Shearon also alleges that he and his wife were intentionally placed into a subprime loan product. He bases the argument upon two facts. First, David Shearon and his wife originally applied jointly for the loans where he had a credit score of 696 and his wife had a score of 760 on a scale of 800. The Shearons jointly were considered “A paper,” a term given to those loan applicants that are deemed to have the highest level of creditworthiness.[9] Shortly before the closing, Karen Shearon was removed as a borrower for the loans. The lender claimed that since no loan terms were modified, the application was not subject to any new underwriting or analysis and the closing occurred without any apparent change to the entire financing process. However, removing the higher rated borrower from the loan would require a new underwriting inquiry, but none was conducted. Therefore, the Shearons argue that they were intentionally placed into a subprime loan product.
The second factor that the lender used to place the Shearons into a subprime product was an adjustable rate mortgage. Throughout the process, Michael Farber from Liberty Capital stated that the Shearons would be placed into a traditional loan product with fixed interest rates. However, when Shearon closed title, he obtained the first loan with a 7.59% rate for the first two years, which would thereafter readjust and rise to no more than 10.59% in February 2008. However, every six months thereafter it was subject to increase with a ceiling of 14.09% with anticipated finance charges over the life of the loan of $682,821.49. The second loan had a fixed rate of 10.75% for the life of the loan with anticipated finance charges over the life of the loan of $121,861.87. Therefore, Shearon would be obligated to pay up to $804,683.36 for a house that sold for $335,000. At the time of closing, these loans were considered subprime products, even though they had qualified for traditional fixed loan products at lower rates, because of their “A paper” creditworthiness.
*440 Shearon also alleges a violation of Banking Law § 6-Z (2) (Z) (i), which has been dubbed the “Counseling Statute.” This section provides that a lender or mortgage broker must deliver, place in the mail, fax or electronically transmit the following notice in at least 12-point type to the borrower at the time of application: “You should consider financial counseling prior to executing loan documents. The enclosed list of counselors is provided by the New York State Banking Department.” Banking Law § 6-Z (2) (Z) (ii) requires that the lender or mortgage broker within three days after determining that the loan is a high cost loan, but no less that 10 days before closing, give the “Consumer Caution and Home Ownership Counseling Notice” to the borrower. This was not done.
David Shearon states in his affidavit that: (1) he has never been provided with, nor did Liberty Capital ever advise him of the nature of the loans and/or the disclosures regarding counseling services available, and (2) the repercussions of the loans on his credit or that a balloon payment was required in connection with the loan. Moreover, the plaintiff fails to provide any evidence of the required disclosure in any of its papers. Plaintiffs attorney simply states that its loans were sold in compliance with the various regulating statutes including Real Estate Settlement Procedure Act, Truth in Lending Act, Home Ownership and Equity Protection Act, New York State Banking Law and federal statutory law prohibiting predatory lending.
A motion for summary judgment must be denied if there are “facts sufficient to require a trial of any issue of fact” (CPLR 3212 [b]). Granting summary judgment is only appropriate where a thorough examination of the merits clearly demonstrates the absence of any triable issues of fact. “Moreover, the parties’ competing contentions must be viewed in a light most favorable to the party opposing the motion.”[10] Summary judgment should not be granted where there is any doubt as to the existence of a triable issue or where the existence of an issue is arguable.* [11] As is relevant, summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist *441 and the movant is entitled to judgment as a matter of law.[12] On a motion for summary judgment, the function of the court is issue finding, and not issue determination.[13] In making such an inquiry, the proof must be scrutinized carefully in the light most favorable to the party opposing the motion.[14] Here, the plaintiff has put forth a plethora of documentary evidence that, at the very least, precludes summary judgment on behalf of the plaintiff; and, accordingly, its motion is denied.
However, when making a motion for summary judgment, the movant always runs the risk that the court may search the record, and in the absence of a cross motion, award summary judgment on behalf of the nonmoving party.[15] When doing so, the court must offer the same careful scrutinization of the proof in the light most favorable to the party against whom summary judgment is being sought.[16] In moving for summary judgment, the plaintiff was required to assemble and lay bare its proof entitling it to summary judgment.[17]
Here, the voluminous documentary evidence demonstrates violations of Banking Law § 6-1 (2) (k), which deals with the plaintiff’s due diligence into the ability of the defendants to repay the loan. The plaintiff has not offered one scintilla of evidence of any inquiry into the defendant’s ability to repay the loan. Banking Law § 6-1 (2) (k) requires this inquiry to be “verified by detailed documentation of all sources of income and corroborated by independent verification.” This failure to inquire is a violation of New York’s Banking Law. Therefore, summary judgment on this affirmative defense is granted in favor of the defendant.
The plaintiff apparently also violated Banking Law § 6-1 (2) (Z) (i), which requires the lending institution to provide a list of credit counselors licensed in New York State to any recipient of a high cost loan. David Shearon states in his affidavit that he never received the notice for required counseling. This document was also not provided to the court by plaintiff, although a *442 copy of the entire origination file was provided.[18] Failure to provide this notice is a violation of Banking Law § 6-Z (2) (Z) (i).
In this action, clearly the most egregious violation of the Banking Law is the violation of section 6-Z (2) (m), which states that no more than 3% of the amount financed is eligible to pay the points and fees associated with closing the loans on the real property. The amount financed to cover the fees is violative of the statute because more than 3% of the amount financed was used to pay the fees and points associated with the loan. The $19,145.69 in expenses equates to almost 5.4% of the high cost loan and is a clear violation of the statute.
After searching the record, it is clear that the lending institution, in providing home financing to David Shearon, violated at least three provisions of New York’s Banking Law. Therefore, summary judgment is granted in favor of the defendant, David Shearon, on his counterclaims for violations of Banking Law § 6-Z (2) (k), (Z) (i), and (m). Consequently, the finding of these violations now triggers Banking Law § 6-Z (7) through (10) which are the remedy and damages provisions of the statute.
Banking Law § 6-Z (7) provides in pertinent part that:
“Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following:
“(a) actual damages, including consequential and incidental damages; and
“(b) statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded; except that this element of statutory damages shall not be awarded for violations of:
“(1) paragraph (i) of subdivision two of this section regarding loan flipping; and
“(2) paragraph (k) of subdivision two of this section regarding ensuring the borrower’s ability to repay the loan, so long as the lender demonstrates that at the time of the loan, it verified by detailed documentation all sources of the borrower’s income and corroborated it with independent verification; or “(ii) five thousand dollars per violation or twice the amount of points and fees and closing costs as *443 defined in this section, whichever is greater, for violations of:
“(1) paragraph (i) of subdivision two of this section regarding loan flipping; and
“(2) paragraph (k) of subdivision two of this section regarding ensuring the borrower’s ability to repay the loan, where the borrower is not entitled to relief under subparagraph (i) of this paragraph.”
In this case, the defendant David Shearon demonstrated by a preponderance of the evidence that the lender violated the anti-predatory lending statutes of New York’s Banking Law. Therefore, David Shearon may be entitled to receive: actual, consequential and incidental damages, as well as all of the interest, earned or unearned, points, fees, the closing costs charged for the loan, and a refund of any amounts paid.
This court will hold a hearing where all parties shall present any evidence as to actual damages and any other evidence not otherwise mentioned herein that may mitigate the findings of this court pertaining to the alleged intentional behavior of the lender who violated several provisions of Banking Law § 6-1. The finding of intentional violation renders the home loan agreement (mortgage) void, and strips the lender from having a right to collect, receive or retain any principal, interest, or other charges whatsoever with respect to the loan, as well as giving the borrower the ability to recover any payments made under the agreement.[19] The hearing shall also be used to determine the amount of damages.
Additionally, the defendant is entitled to receive reasonable attorney fees in conjunction with the defense of this action.[20]
Accordingly, it is hereby ordered that the plaintiffs motion for summary judgment is denied in its entirety; and it is further ordered that the foreclosure action shall be stayed until the final determination by this court as to the extent of the applicability of Banking Law § 6-1 (10) as well as the assessment of any damages.

. Liberty Capital Mortgage was doing business as HCI Mortgage Company located in Lake Ariel, Pennsylvania.

. 2005 Internal Revenue Service Abstract and Return for David and Karen Shearon.

. “Home loan” is defined in Banking Law § 6-1 (1) (e).

. Banking Law § 6-1 (6).

. Banking Law § 6-1 (7).

. Banking Law § 6-1 (8).

. Banking Law § 6-1 (9).

. Jeune v O.T. Trans Mix Corp., 29 AD3d 635 (2d Dept 2006); Pautienis v Legacy Capital Corp., 36 AD3d 462 (1st Dept 2007).

. See EMC Mtge. Corp. v Batista, 15 Mise 3d 1143(A), 2007 NY Slip Op 51133(U) (Sup Ct, Kings County 2007).

. Marine Midland Bank v Dino & Artie’s Automatic Transmission Co., 168 AD2d 610, 610 (2d Dept 1990) (internal quotation marks omitted).

. American Home Assur. Co. v Amerford Inti. Corp., 200 AD2d 472 (1st Dept 1994).

. Rotuba Extruders v Ceppos, 46 NY2d 223 (1978); Herrin v Airborne Frgt. Corp., 301 AD2d 500 (2d Dept 2003).

. Wiener v Ga-Ro Die Cutting, 104 AD2d 331 (1st Dept 1984), affd 65 NY2d 732 (1985).

. Glennon v Mayo, 148 AD2d 580 (2d Dept 1989).

. CPLR 3212 (b); Gorman v Town of Huntington, 47 AD3d 30 (2d Dept 2007); Dunham v Hilco Constr. Co., 89 NY2d 425 (1996).

. Federal Natl. Mtge. Assn, v Katz, 33 AD3d 755 (2d Dept 2006); Lacy v New York City Hous. Auth., 4 AD3d 455 (2d Dept 2004).

. First Natl. City Bank v Mayes, 35 AD2d 922 (1st Dept 1970).

. See reply affirmation of Heather A. Johnson, Esq., ¶ 3.

. Banking Law § 6-1 (10).

. Banking Law § 6-1 (8).