## Sovereign Bank v. Gawron

C.P. of Lackawanna County, no. 08 CV 5095.

*Sheetal R. Shah-Jani,* for plaintiff.
*William E. Vinsko Jr.,* for defendant.

NEALON, *J.,* June 16, 2010—The lender's summary judgment motion in this residential mortgage foreclosure action presents the relatively novel issue of whether a borrower may void and rescind a mortgage agreement

based upon the predatory lending practices of a lender's agent in fraudulently generating a grossly inflated property appraisal in order to procure a loan and mortgage that far exceed the fair market value of the mortgaged realty. Pennsylvania law prohibits the use of fraudulent appraisals in connection with residential mortgages and recognizes that a mortgage agreement may be voidable based upon fraud in the inducement involving the assignor lender or its agent. Since the borrowers have produced an expert appraisal report reflecting that the mortgage broker's appraisal figure was five times the actual value of the property, and that mortgage broker has been indicted for procuring fraudulent appraisals to qualify borrowers for higher mortgages, genuine issues of material fact exist with regard to the borrowers' affirmative defense of fraudulent inducement. Thus, the assignee lender's motion for summary judgment will be denied.

## I. FACTUAL BACKGROUND

Plaintiff Sovereign Bank instituted this residential mortgage foreclosure suit against defendants Gerald Gawron and Mark Gawron based upon a note and mortgage that were executed by the Gawrons and SIB Mortgage Corporation on July 2, 2002. The Gawrons' mortgage was subsequently assigned to the Bank via an "assignment of mortgage" formalized by the Bank and Mortgage Electronic Registration Systems, Inc., as nominee for SIB Mortgage Corporation, on August 7, 2008. (Plaintiff's complaint, ¶3; plaintiff's motion for summary judgment, exhibits A and A2.)

The Bank has averred that the Gawrons are in default as a result of their failure to make principal and interest payments due under the note and mortgage. (Plaintiff's complaint, ¶5.) The Gawrons deny any such default and further allege that they have made all "payments based on the value of the residence, which is far below the mortgaged value, as was discovered when the mortgage broker responsible for the loan was investigated for mortgage fraud." (Defendants' answer and new matter, ¶5.) The Gawrons also assert "the affirmative defense of fraud" in the inducement based upon "the misrepresentations made by the mortgage broker" which led the Gawrons "to believe that the value of the home . . . was far in excess of the actual value." (*Id.,* ¶¶17, 22-23.) The Gawrons seek judgment in their favor on the ground that they were fraudulently induced to enter into the mortgage agreement by the mortgage broker who acted as the lender's agent. (*Id.,* p. 4.)

According to an affidavit executed by Gerald Gawron and Mark Gawron, the mortgage broker involved with the Gawrons' refinancing of the subject property at 146 Bellman Street, Throop, was Mr. Alex Gambini. (Docket entry no. 11.) While reportedly acting as the original lender's agent, Gambini manufactured a grossly inflated appraisal of the Bellman Street property so that a loan and mortgage in the amount of $249,500 could be issued to the Gawrons. (Defendant's brief in opposition at pp. 2-3; Plaintiff's motion for summary judgment, exhibits A and A1.) The Gawrons have produced an expert report from a certified appraiser, W. Nevin Gerber, attesting that at the time of the Gawrons' refinancing in July 2002, the

true value of the Bellman Street property was merely $55,000. (Docket entry no.12 at pp. 4, 7.) Based upon the fraudulent appraisal secured by Gambini, the Gawrons were led to believe that the resale value of the Bellman Street property would be sufficient to satisfy their loan/mortgage indebtedness in the event that they were unable to make their monthly payments and defaulted on the loan/mortgage. (Defendant's brief in opposition, p. 2.)

On October 7, 2008, the United States Department of Justice indicted Gambini for mail fraud in violation of 18 U.S.C. §1341. The federal indictment charges that Gambini "operated a financial services business, employing real estate appraisers and loan processors who appraised properties and assisted [borrowers] with the mortgage application process," and "on numerous occasions [between January 1999 and December 2002] knowingly instructed others to conduct false and fraudulent appraisals of properties, produce false and fraudulent documents, supplied those false and fraudulent appraisals, and supplied software to accomplish false and fraudulent appraisals . . . in order qualify [borrowers] for higher mortgages." (See *U. S. v. Gambini,* No. 3:08-CR-00369 (M.D. Pa.), docket entry no. 1, ¶¶1-2.) On June 8, 2010, Gambini's criminal trial was postponed to July 26, 2010 since the parties are negotiating a plea agreement and require additional time to consummate that agreement. (*Id.,* at nos. 53-54.)

The Bank has filed a motion for summary judgment seeking an in rem judgment against the Gawrons "for $250,316.83 plus interest from July 29, 2008 at the rate

of $53.40 per diem and other costs and charges collectible under the mortgage, for foreclosure and sale of the mortgaged property." (Plaintiff's motion for summary judgment, p. 4.) In apparent anticipation of the Gawrons' fraud defense, the Bank avers that "[t]he alleged issues that the [Gawrons] may or may not have with [Gambini] at origination are exactly that, against [Gambini], not the [Bank], who did not originate the loan, nor did it have any relationship with [Gambini]." (*Id.,* ¶11.) In response, the Gawrons maintain that the assignment of the mortgage to the Bank by its predecessor-in-interest "does not preclude this defense as the [Bank] suggests." (Defendants' response to motion for summary judgment, ¶11.) Moreover, the Gawrons specifically assert that the original lender, SIB Mortgage Corporation, falsely "represented [that] the value of the property was far more than the actual value" and that the Gawrons "were granted a mortgage on a property which does not and has not had the value which the [lender] represented it had." (*Id.,* ¶¶1-2.) The Gawrons submit that there are genuine issues of fact concerning "the value of the property in light of the misrepresentations of the lender and mortgage broker," as well as the "preliminary question as to whether the [Bank] has any liability for the actions of its predecessor entities." (Defendants' brief in opposition, p. 3.)

## II. DISCUSSION

### (A) *Standard of Review*

Summary judgment is appropriate "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law." *Stimmler v. Chestnut Hill Hospital,* 602 Pa. 539, 553, 981 A.2d 145, 153 (2009). Summary judgment may be entered in a mortgage foreclosure action "if the mortgagors admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount." *Cunningham v. McWilliams,* 714 A.2d 1054, 1057 (Pa. Super. 1998), *appeal denied,* 557 Pa. 653, 734 A.2d 861 (1999); *Wilson v. Parisi,* 549 F. Supp.2d 637, 655 (M.D. Pa. 2008). When considering a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Abrams v. Pneumo Abex Corp.,* 602 Pa. 627, 634-635, 981 A.2d 198, 203 (2009); *Black v. Labor Ready, Inc.,* 2010 WL 1645962 at * 2, ¶13 (Pa. Super. 2010). The moving party bears the burden of proving that no genuine issue of fact exists and that the movant is entitled to judgment as a matter of law, *Stimmler,* 602 Pa. at 554, 981 A.2d at 154, and "[i]f there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Mull v. Ickes,* 2010 WL 1758567 at * 2, ¶6 (Pa. Super. 2010); *Kurowski v. Burroughs,* 2010 WL 1645961 at * 4, ¶11 (Pa. Super. 2010).

(B) *Fraud in the Inducement Defense*

The viability of a mortgage foreclosure action depends upon the existence of a valid mortgage. *Straker v. Deutsche Bank National Trust,* 2010 WL 500412 at * 3 (M.D. Pa. 2010) (Vanaskie, J.) (quoting *In re Madera,*

586 F.3d 228, 232 (3rd Cir. 2009)); *In re Calabria,* 418 B.R. 862, 866-867 (W.D. Pa. 2009) ("In Pennsylvania, actions in mortgage foreclosure are dependent on the existence of a valid mortgage."); *In re Randall,* 358 B.R. 145, 158 (E.D. Pa. 2006) (same). Not unlike other written instruments, mortgages are governed by the law of contracts and interpreted accordingly. See *Second Federal Savings and Loan Association v. Brennan,* 409 Pa. Super. 581, 586, 598 A.2d 997, 999 (1991). It is a fundamental precept of contract law that if a party is fraudulently induced to enter into an agreement (*i.e.,* "but for" fraudulent misrepresentation(s) the contract would not have been executed by the innocent party), the agreement is void or voidable at the option of the injured party. *Youndt v. First National Bank of Port Allegheny,* 868 A.2d 539, 546 (Pa. Super. 2005); *Blumenstock v. Gibson,* 811 A.2d 1029, 1036 (Pa. Super. 2002), *appeal denied,* 573 Pa. 714, 828 A.2d 349 (2003); *1726 Cherry Street Partnership v. Bell Atlantic Properties Inc.,* 439 Pa. Super. 141, 148-150, 653 A.2d 663, 667-668 (1995), *appeal denied,* 544 Pa. 647, 664 A.2d 976 (1995). Therefore, if borrowers raise factual issues regarding fraud in the inducement in conjunction with the formation of the mortgage, they have asserted a valid defense to the foreclosure, and summary judgment in favor of the lender is not appropriate. *Greentree Consumer Discount Company v. Newton,* 909 A.2d 811, 813-15 (Pa. Super. 2006). See also, *Cunningham,* 714 A.2d at 1056 ("Thus, a counterclaim in a foreclosure action is cognizable if it alleges fraud in the inducement to the mortgage, but not if it alleges fraud in the inducement to the contract of sale.");

*In re Randall,* 358 B.R. at 157 (mortgagors can properly defend in rem foreclosure proceedings by demonstrating that the mortgage is void due to fraud).

Other jurisdictions have relied upon statutory law regulating "predatory lending" practices by lenders in granting relief to borrowers in mortgage foreclosure actions. See *e.g., LaSalle Bank, N.A. v. Shearon,* 19 Misc. 3d 433, 439-43, 850 N.Y.S.2d 871, 875-79 (2008) (lender violated statutory provision requiring due diligence inquiries for sub-prime, adjustable rate mortgage loan by issuing a loan without first inquiring into borrowers' ability to repay). See also, Caggiano et al., "Predatory Lending Law Developments and Assignee Liability under HOEPA and State Law," 62 Bus. Law. 617 (February 2007). The protections afforded by the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§201-1 to 201-9.3, have been extended to the purchase of real estate for residential purposes. See *Growall v. Maietta,* 931 A.2d 667, 676 (Pa. Super. 2007), *appeal denied,* 597 Pa. 717, 951 A.2d 1164 (2008). In *Wilson v. Parisi, supra,* former U. S. District (now U. S. Court of Appeals) Judge Thomas I. Vanaskie considered whether property appraisers and lending institutions could be liable for damages under section 2(4)(xxi) of the UTPCPL, 73 P.S. §201-2(4)(xxi), for "misleading and deceptive statements and omissions concerning the value and the financing of the houses purchased by consumers . . . ." *Wilson,* 549 F. Supp.2d at 640, 665. Noting that "the UTPCPL is to be liberally construed in order to effectuate its purpose," Judge Vanaskie denied the motion for summary judgment

.

that had been filed by the appraisers and lending institutions and concluded that "[t]here is a genuine issue of material fact as to whether the PK defendants knowingly falsely represented the value of the Wilsons' property by securing a fraudulent appraisal, thus requiring the Wilsons to pay more than the fair market value for their home." *Id.,* at 666.[1]

The gist of the Gawrons' fraud defense is that they have been exposed to a deficiency judgment of almost $200,000 (*i.e.,* the bank's demand for judgment in the amount of $250,316.83, plus $53.40/day from 7/29/08, less the property's resale value of $55,000 if sold at sheriff sale) due to the fact that they were fraudulently granted a loan of $249,500 on a property that had a fair market value of $55,000. The UTPCPL prohibits the use of deceptive appraisals in connection with residential mortgages, see *Wilson, supra,* and a mortgage agreement may be voided based upon fraud in the inducement. See *Greentree Consumer Discount Company, supra.* If the Gawrons can establish that Gambini fraudulently induced them to enter into the loan and mortgage agreements with the original lender, SIB Mortgage Corporation, and that Gambini was acting as the actual or ostensible agent of SIB Mortgage Corporation at that time, the Gawrons

---

1. Section 512(b) of the Mortgage Bankers & Brokers and Consumer Equity Protection Act ("CEPA") similarly provides that "[a] lender shall not engage in a pattern or practice of making covered loans based on the consumer's collateral without regard to the consumer's repayment ability . . . ." 63 P.S. §456.512(b). That Act defines a "covered loan" as "[a] consumer credit mortgage loan transaction involving property located within this Commonwealth . . . for which the original principal balance of the loan is less than $100,000." 63 P.S. §456.503. Since the Gawrons borrowed $249,500, CEPA is inapplicable.

arguably may be able to void and rescind those agreements. The summary judgment record and the federal Indictment in *U.S. v. Gambini* raise triable issues of fact with respect to the elements of that affirmative defense. What must still be addressed, however, is whether the rights of the assignee, Sovereign Bank, may be limited by the conduct of the assignor, SIB Mortgage Corporation, and/or its putative agent in the formation of the mortgage agreement.

## (C) *Assignee Liability*

In reply to the Gawrons' affirmative defense of fraud in the inducement, the Bank maintains that it cannot be held accountable for the actions of the assignor-lender or its alleged agent. (Plaintiff's motion for summary judgment, ¶11.) Under the law of assignment, the assignee stands in the shoes of the assignor and "succeeds to no greater rights than those possessed by the assignor." *Crawford Central School District v. Commonwealth,* 585 Pa. 131, 137, 888 A.2d 616, 619-20 (2005). "Conversely, an assignee's right against the obligor is subject to all of the limitations of the assignor's right, to all defenses thereto, and to all set-offs and counterclaims which would have been available against the assignor had there been no assignment, provided that these defenses and set-offs are based on facts existing at the time of the assignment." *Smith v. Cumberland Group, Ltd.,* 455 Pa. Super. 276, 286, 687 A.2d 1167, 1172 (1997) (citing *Peoples Pittsburgh Trust Company v. Commonwealth,* 359 Pa. 622, 627-28, 60 A.2d 53, 56 (1948)). *Accord, American Lumber Corp. v. National R.R. Passenger Corp.,* 886 F.2d

50, 55 (3d Cir. 1989) ("[A]n assignee of a chose of action takes it subject to all defenses . . . existing at the time of the assignment" (quoting *General Electric Credit Corp. v. Security Bank,* 244 A.2d 920, 923 (D. C. App. 1968))); *E-Time System, Inc. v. Voicestream Wireless Corp.,* 2002 WL 1917697 at * 9 (E.D. Pa. 2002) ("Importantly, it is a universal and uncontroversial tenet of contract law that an assignee of a claim takes the same subject to all defenses that could validly have been raised by the defendant against the assignor at the time of the assignment.") (citing *North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co.,* 152 U.S. 596 (1894)); Restatement (Second) of Contracts §336(2) ("The right of an assignee is subject to any defense . . . of the obligor which accrues before the obligor receives notification of the assignment . . . .").

We acknowledge that a few trial courts have concluded that a mortgage assignee is not subject to the defenses and counterclaims that could have been asserted by the obligor against the mortgage assignor. See *e.g., W. M. Specialty Mortgage LLC v. Shuttleworth,* 82 D.&C.4th 129, 132 (Lawrence Cty. 2007) (striking mortgage foreclosure defendant's counterclaim based upon the UTPCPL on the ground that the mortgage assignor, not the plaintiff-mortgage assignee, was the perpetrator of the fraudulent loan practices alleged in the counterclaim). However, the merits of the Gawrons' affirmative defense must be decided in accordance with the appellate authority set forth in *Cumberland Group Ltd.* and its progeny. Therefore, the Bank's assigned right against the Gawrons in this litigation is subject to the affirmative defenses that the Gawrons could have asserted against

SIB Mortgage Corporation at the time of the assignment, including their defense of fraud in the inducement.

### (D) *Rescission Remedy*

In the event that the Gawrons are successful in their effort to void and rescind the mortgage agreement based upon fraud in the inducement, it may prove to be a pyrrhic victory. Rescission is an equitable remedy which "amounts to the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract." *Keenheel v. Commonwealth, Pennsylvania Securities Commission,* 134 Pa. Commw. 494, 501, 579 A.2d 1358, 1361 (1990); *Erie Telecommunications Inc. v. City of Erie,* 853 F.2d 1084, 1092 (3d Cir. 1988). Since equitable rescission is a form of retroactive relief that returns the parties as nearly as possible to their original positions with respect to the subject matter of the contract, restitution often accompanies rescission. *Baker v. Cambridge Chase Inc.,* 725 A.2d 757, 766 (Pa. Super. 1999), *appeal denied,* 560 Pa. 716, 745 A.2d 1216 (1999). Hence, one who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the rescinded contract. *Keenheel, supra; R & R Capital LLC v. Merritt,* 632 F. Supp.2d 462, 480 (E.D. Pa. 2009); *Koken v. Cologne Reinsurance (Barbados) Ltd.,* 34 F. Supp.2d 240, 255 (M.D. Pa. 1999).

Consequently, if the Gawrons rescind the loan and mortgage agreements due to fraud in the inducement, it

is conceivable that they will be obligated to return the borrowed proceeds as part of that rescission. It is theoretically possible that the refundable sum could be equitably adjusted to more closely reflect the true value of the mortgaged property at the inception of the indebtedness, see *e.g., Sharabianlou v. Karp,* 181 Cal. App. 4th 1133, 1144, 105 Cal. Rptr. 3d 300, 309 (2010) (in equitable rescission, the court should do complete equity between the parties and, if necessary, may grant monetary relief to do so), but absent such a remedial modification, the Gawrons could remain responsible for a substantial deficiency judgment even if they prove fraudulent inducement. In the interim, Sovereign's motion for summary judgment will be denied based upon the arguable validity of the Gawrons' affirmative defense of fraud in the inducement.

## ORDER

AND NOW, June 16, 2010, upon consideration of the "motion for summary judgment" of plaintiff Sovereign Bank, as assignee of Mortgage Electronic Registration Systems Inc., as a nominee for SIB Mortgage Corporation, the exhibits and memoranda of law submitted by the parties, and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that the motion for summary judgment of plaintiff Sovereign Bank, as assignee of Mortgage Electronic Registration Systems Inc., as a nominee for SIB Mortgage Corporation, is denied.